## SUGG v. HENDRIX.

### No. 11447.

Circuit Court of Appeals, Fifth Circuit.

Feb. 1, 1946.

Rehearing Denied Feb. 25, 1946.

See also, 142 F.2d 740.

Ross R. Barnett, of Jackson, Miss., and John W. Crisler, of Clarksdale, Miss., for appellant.

Edward C. Brewer, of Clarksdale, Miss., for appellee.

Before HOLMES, WALLER, and LEE, Circuit Judges.

WALLER, Circuit Judge.

The main question presented by this appeal is whether or not the lower Court erred in holding, as a matter of law, that Defendant's servant was not in and about his master's business when the accident occurred.

Plaintiff was a truck driver for Standard Oil Company. Defendant was a contractor engaged in re-enforcing and raising the Mississippi River levee at a point some thirty-five miles north of Greenville in the State of Mississippi, in which work it used numerous motor driven machines, such as tractors, trucks, drag lines, and bulldozers. Fuel for these machines was furnished by Standard Oil Company under a contract which required it to deliver the fuel into tanks in the machines and into storage tanks of the Defendant at points where the work of the Defendant was in progress.

The Plaintiff testified that Defendant hauled dirt from the space between the levee and the river and deposited it on top of the levee in order to raise its height three or four feet; that the pit from which the dirt was taken, and the machines and tanks of the Defendant, were located between the levee and the river, so that he was required to drive the fuel truck over the levee and down to the pit below in order to deliver its contents to Defendant's machines and tanks; that as the work progressed different pits were used so as to shorten the haul of the dirt from pit to point of deposit on the levee;[1] that he made approximately ten trips per week. He further testified that Brown, a driver of one of Defendant's caterpillar tractors, pursuant to the orders of Woods, a foreman of Defendant, took the caterpillar tractor and pulled the oil truck back upon the levee; that the Plaintiff then headed the truck down the slope of the levee and skidded, or slid, to the bottom; that after fueling the machines and disposing of his load, Plaintiff drove back to the foot of the levee and waited until the employee, Brown, returned with the caterpillar for the purpose of pulling the fuel truck over the levee; that Brown stopped the tractor directly in front of the truck but on the steep incline of the levee, and when Plaintiff stepped between the tractor and the front of the truck to fasten a towing chain from the caterpillar to the truck something was suddenly released and the tractor rolled down the incline and caught Plaintiff between it and the truck and seriously injured him.

There was testimony by Brown, the driver of the tractor, that he had locked the brakes but that they were defective and that the brake lock, because of its defective condition, did not hold but gave way and allowed the tractor to roll down against the Plaintiff.

At the conclusion of the testimony for Plaintiff the lower Court directed a verdict for the Defendant, holding that the attempt to pull the truck over the levee was merely an act of "common every day

---

[1] The Plaintiff also gave this testimony:
"* * * On this particular day they had gotten far enough down on the levee until they had filled up the road I had been using and it had rained and they hadn't had time to fix another one.

"Q. Did you go over the same road each time, or a new road, in making your deliveries? A. That would depend on how far down they had moved their equipment and how far they had worked on the levee.

"Q. Had they closed up the road you had been using? A. There weren't any signs saying it was closed up, but they had filled up that place.

"Q. Filled up what place? A. The road I had been using before that day.

"Q. How long had you been using that road? A. Oh, probably a week I had been traveling that road.

"Q. Well then, tell us what kind of road you had to use on this occasion?
*    *    *    *    *    *

"Q. What kind of soil did you go over in going down to the place where you

had made deliveries and in coming back up the levee? A. On that particular afternoon, I left the bulk plant around one o'clock. It rained on me on the way up there. Since it had rained, before I attempted to go up on the levee I went up and down the levee to find a place to get up. I found a place approximately a quarter of a mile down the levee where it would be closest to get in, that they hadn't refilled with new dirt, so I went down there. What caused me to go to this place, they had worked far enough down the levee until all of it was new gumbo. It had just rained and it was all slick so it was absolutely necessary to go in at a new place. I was attempting to go north on top of the levee to find a place to get down and the rear wheel on the left-hand side of the truck slipped off to where it looked like it was going to slide down the inside of the levee rear end first. I got it stopped and went to the shop and asked for help to get the truck pulled back up. I asked for Mr. Wood, the foreman on the job and he sent a man by the name of Brown."

courtesy" and that Defendant's servant was not engaged in the master's business at the time of Plaintiff's injury.

We do not think that it appears as a matter of law. that the driver of the caterpillar was not engaged in and about the master's business at the time of Plaintiff's injury.

It was necessary for the contractor to have fuel for the operation of its motor driven equipment. Getting such fuel delivered was a matter at least of mutual concern to it and the Plaintiff. It was necessary for the oil truck to cross over the levee in order to reach Defendant's equipment between the levee and the river. As the work progressed, crossings would have to be made at places near which the equipment was moved from time to time. It is in evidence that the road which the Plaintiff had theretofore been traveling in crossing the levee, and in the delivery of the fuel, had been filled with dirt by Defendant and made impassable. The Defendant placed its equipment and tanks at places that were not accessible to any public highway, and it had changed the location of that equipment at least three times.

The inference can reasonably be drawn that the Defendant could not be assured of certain deliveries of the fuel to its equipment if it had placed that equipment where there was no way of ingress or egress available to the Oil Company's trucks, or if it had closed such way of ingress and egress as theretofore had been available. The facts and circumstances might justify also an inference of the existence of an implied obligation[2] on the part of the Defendant to furnish reasonable means of ingress or egress for the fuel truck, under the circumstances existing at the time. In such an event, if the Defendant, by filling the road of ingress and egress with dirt, thereby failed to fulfil that obligation to afford such means of ingress and egress, the inference might also be justified that such obligation, if any, could be more easily fulfilled by towing the Oil Company's truck with a caterpillar than by keeping the road open at that time and place. It would also seem that the jury might reasonably draw the in-

ference that if the Defendant did have an obligation to provide means of access to the oil truck and it chose to have deliveries made at a point where it had blocked travel by its deposit of dirt in the passageway, then the responsibility of furnishing some other means or method of ingress and egress to the oil truck might likewise be an implied obligation of the Defendant, and if the Defendant chose to comply with such an obligation on the occasion in question by using a tractor to tow the oil truck rather than to keep a passageway open, then it could not be said as a matter of law that the attempt to tow the truck back across the levee was not in the course of its business.

Whether the assistance intended to be given the Plaintiff was in the course of Defendant's business or merely an act of unselfish generosity is a question over which the minds of reasonable men might differ, and the Court was in error in deciding the question as a matter of law.

Appellant also argues that even if the employee of the Defendant were not in and about his master's business, nevertheless, Defendant is liable for failure to keep the premises upon which the Plaintiff was an invitee in a reasonably safe condition, and he cites numerous cases dealing with injuries occurring in stores and other public places, but he does not show that the premises where the injury occurred belonged to, or were under the control of, the Defendant, nor that the Defendant had either the power or the duty to keep the ground from being wet and slick. Moreover, the condition of the premises was not the proximate cause of the injury. Furthermore, no allegation of negligence is based on unsafe premises.

The Appellant also argues that the Defendant is responsible for the negligence of its servant, Brown, but again we note that the real ground of negligence alleged was the failure of the Defendant to exercise reasonable care in that it furnished a caterpillar with worn and defective brakes. The complaint also alleges failure of the Defendant to exercise reasonable care by not furnishing a sufficient number of fellow servants to connect the caterpillar and the tank truck.

---

2 Plaintiff testified:
"* * * On this particular day they (meaning Defendant) had gotten far enough down on the levee until they had filled up the road I had been using and it had rained *and they hadn't had time to fix another one.*" (Emphasis added.)

There is no evidence in support of this allegation, and the Appellant apparently has abandoned it by not arguing it.

The Appellee urges that even if the lower Court were in error in the reasons assigned for sustaining the motion for directed verdict, nevertheless, a verdict of the jury in favor of the Plaintiff could not lawfully have been rendered for the reason that the Defendant had recently had the tractor repaired, and that it had no knowledge or notice that said brakes were defective or in bad condition, meanwhile, however, admitting that its servant, Brown, testified that he knew of the bad condition of the brakes of the tractor at and before the attempted use thereof on the occasion in question.

The law imputes to the master the negligent act of the servant if it is done within the scope of the servant's employment in the business of the master. It expects that every person shall so conduct his business as not to negligently injure others, and if he undertakes to run his business through the use of servants he has the responsibility to see that third parties are not injured by breaches of duty committed by his servants in the conduct of that business. He cannot have the advantage of his servant's acts done in his behalf and have none of the disadvantages in case such servant should negligently injure others.

The Plaintiff was a licensee or business invitee, having a right to be at the place where he was injured, and if the servant of the Defendant were acting in and about his master's business in utilizing the tractor to tow the truck over the levee, then the master would owe to the Plaintiff the duty to exercise reasonable care to furnish reasonably safe instrumentalities for the use and purpose involved.

Whether or not the servant, Brown, was using a tractor in the course of his master's business at the time of the Plaintiff's injury that had defective brakes or defective brake locks which caused the tractor to roll down against the Plaintiff and injure him, and, if so, whether or not the furnishing and use of such tractor with such defective brakes or brake locks amounted to a failure on the part of the Defendant to exercise reasonable care for the safety of the Plaintiff under the circumstances, were questions which should have been submitted to the jury.

The judgment of the lower Court is reversed and the cause is remanded for a new trial.

Reversed and remanded.

### On Petition for Rehearing.

PER CURIAM.

The petition for rehearing in this case is denied.

Judge HOLMES concurs only in the result, and in such portions of the opinion as held that it was a question for the jury whether the driver of the caterpillar was engaged in and about the master's business at the time of plaintiff's injury, and, if so, that it was also a question for the jury whether the defendant was guilty of negligence that directly and proximately caused the injury.