George M. CAMPBELL, Plaintiff,

v.

Arthur S. FLEMMING, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. W–2096.

United States District Court
D. Kansas.

Nov. 28, 1960.

Everett L. Baker, Lyons, Kan., for plaintiff.

George Peabody, Asst. U. S. Atty., Wichita, Kan., for defendant.

HILL, Chief Judge.

This is an action under the Social Security Act, as amended, 42 U.S.C.A. § 405 (g), to review a "final decision of the Secretary" of Health, Education and Welfare denying the establishment of a period of disability and disability benefits to the plaintiff.

The application for review was timely made and the matter is before the Court upon the respective parties' motions for summary judgment.

The issue before this Court is a defined and limited one, that being whether there is substantial evidence in the record to support the hearing examiner's findings that plaintiff has failed to establish that he had a medically determinable physical impairment or combination of impairments of sufficient severity to have prevented him from engaging in any substantial gainful activity.

Plaintiff was born September 2, 1895; he completed 8 years of school and took a correspondence course for railroad work. In his application for benefits plaintiff stated he became unable to work on February 11, 1958, due to an accident at work when he fell and injured his back. He stated he could do no heavy work and that his experience was in this type of work,

having at times worked as a bulldozer operator and truck driver and since 1949 as an oil field tool dresser.

In an interview after the applications in this case were filed, plaintiff stated his back injury was not his major impairment but that his main disability was ulcers.

The medical reports are those of Dr. George F. Davis, Kanapolis, Kansas, Dr. David Lukens of Hutchinson, Kansas, Dr. H. St. Clair O'Donnell of Ellsworth, Kansas, and Dr. Arthur Bacon, a Neurologist, at the Wichita Clinic.

The medical reports of Dr. George P. Davis show that in 1947 plaintiff had surgery for a perforated ulcer. On February 13, 1958, Dr. Davis again performed surgery for a perforated ulcer and reported that plaintiff "has to watch diet, but gets along with stomach pretty well * * *" In a later report dated November 14, 1958, Dr. Davis said, "I think this man gets over his operations very well." The medical reports generally show that he was affected with ulcers, and plaintiff confirmed this. According to a report dated February 2, 1959, by Dr. David Lukens, specialist in internal medicine at the Medical Center, Hutchinson, Kansas, plaintiff stated that he " * * * can eat most anything he wants and has no symptoms aside from hemorrhoids." X-ray examinations with the use of barium throughout the gastrointestinal tract showed normal function. Dr. Lukens' report dealt primarily with plaintiff's complaints of injury to his back and his ulcers and included a complete physical examination, from which the doctor summarized plaintiff's condition as follows:

"In my opinion this man has insufficient evidence of functional impairment in any organ system to state that he is disabled for any substantial gainful work."

After an initial determination by the Kansas State Vocational Service denying plaintiff's claim, he requested reconsideration and, for the first time, asserted "black outs and fainting spells" as one of the impairments rendering him unable to work. After the state agency had affirmed its initial determination, plaintiff apparently abandoned his claims based on back injuries and ulcers, asking for a hearing on the basis of "blacking out spells". The medical evidence pertaining to plaintiff's alleged "black outs" indicates by the report of Dr. Davis that prior to 1958 plaintiff had "a few spells where he became unconscious then comes out of it but doesn't realize that he does it." Dr. Davis' report of November 14, 1958, identified the "black outs" as "a short period of unconsciousness for * * ½ to 2 minutes", following which plaintiff did not know anything had happened. According to the doctor, plaintiff became convinced of these episodes by his wife and children about 3 years before November of 1958. Dr. Davis stated that plaintiff "could work if he had someone to watch him until he recovers from unconsciousness."

On May 8, 1959, Dr. H. St. C. O'Donnell reported that plaintiff had periods when he was "dazed", occurring 3 or 4 times a week, and the diagnosis was a form of epilepsy known as petit mal. The report indicates that such attacks last for short periods of 3 to 4 minutes. Dr. O'Donnell's report of October 10, 1959, apparently relates to his prior examination and recites a diagnosis of epileptic seizures of the petit mal type. Regarding functional capacity for work, the report states that an attack "interferes with any work." Neurological and psychiatric consultation was recommended.

On June 20, 1959, Dr. Arthur Bacon, a Neurological Specialist at the Wichita Clinic, examined plaintiff. His report reveals that, in March or April 1958, plaintiff's wife told him that he must have had a "black out", but it was extremely transitory because the patient did not lose his erect sitting position. He was not aware of having been out of contact with his surroundings. When asked by the doctor about these attacks, the plaintiff "reaffirmed that the black outs have never been of any importance; that is, they have been much too short for him to notice or for him to lose his posture.

He has not fallen with any of these so-called spells. Actually, as far as the patient's personal knowledge goes, he has never had a black out." Thorough examination showed a normal nuerological status. The patient was alert and, in the opinion of the doctor, mentally competent. He walked without deviation and could stand with his feet close together without swaying, with eyes open or closed. The carotid arteries appeared strong and equal on both sides. Tests showed other faculties to be normal or without defect. No abnormal reflexes were found. In conclusion, Dr. Bacon found:

> " * * * no neurological abnormalities and no disability in the neurological sphere. The black out spells as described by the patient are of no importance in regard to his obtaining gainful occupation."

Dr. O'Donnell's final report dated February 29, 1960, is a short general statement that plaintiff's condition essentially was no different than in previous examinations.

Plaintiff has successively asserted three separate and apparently disconnected impairments. The first was the back injury of February 11, 1958. The medical evidence proves that the effect of this injury had disappeared in about five months. The next allegation of disability was by reason of ulcers. Plaintiff underwent surgery for a perforated ulcer on February 13, 1958. The medical reports show that plaintiff previously had surgery for ulcers in 1947, but subsequently engaged in his regular occupations for some nine years. The results of the second operation as reported by all of the physicians show plaintiff has recovered from his ulcers and they no longer constitute a "disability" within the meaning of the Act.

Plaintiff finally turns to a claimed impairment of "black outs" referred to in the medical reports of August 25, 1958, and which were the subject of neurological examination. Certainly there is some conflict in the medical reports. The general practitioner believes the condition to be "petit mal". The specialist, who ex-amined the plaintiff at the request of his own physician, found "no neurological abnormalities and no disability in the neurological sphere." The examiner was entitled to believe the specialist and, therefore, there is ample evidence to support his conclusion of lack of disability.

Aside from this, the record shows that the onset of plaintiff's alleged periods of disability due to "black outs" was three years prior to the time he quit work for another reason. Apparently these "black outs" were not of sufficient severity to hamper him in his usual occupations for some three years prior to February 11, 1958, and there does not appear to be any evidence in the record to indicate that this plaintiff could not engage in some substantial gainful employment. Therefore, there is ample evidence in the record to sustain the findings of the Examiner.

The motion of plaintiff for summary judgment should be, and is, hereby overruled. The motion of defendant for summary judgment should be, and is, hereby sustained.