David H. GARVIN

v.

AMERICAN MOTOR SALES CORPORATION, Appellant.

No. 14093.

United States Court of Appeals Third Circuit.

Argued Jan. 25, 1963.

Decided June 3, 1963.

Rehearing Denied June 28, 1963.

John G. Buchanan, Jr., Pittsburgh, Pa. (Robert E. Mertz, Buchanan, Ingersoll, Rodewald, Kyle & Buerger, Pittsburgh, Pa., on the brief), for appellant.

James E. McLaughlin, Pittsburgh, Pa. (Gene K. Lynch, McArdle, Harrington

& McLaughlin, Pittsburgh, Pa., on the brief), for appellee.

Before STALEY and SMITH, Circuit Judges, and SHAW, District Judge.

STALEY, Circuit Judge.

This is an appeal by defendant American Motors Sales Corporation from a judgment of the district court entered upon a jury verdict in favor of plaintiff. David H. Garvin. Plaintiff brought suit under the Automobile Dealers Day in Court Act, 15 U.S.C.A. §§ 1221–1225, and was awarded damages for defendant's refusal to renew his automobile franchise. The suit was premised on the failure of the manufacturer to act in "good faith" as that term is defined in the statute.[1] The question presented is whether there is sufficient evidence to support the verdict in plaintiff's favor.

Garvin had been a franchised dealer of defendant and its predecessor, Nash Kelvinator Sales Corporation, since 1945. In September, 1957, he was informed that his franchise would not be renewed when it expired in December of that year. However, upon plaintiff's application, a new agreement was executed, effective March 3, 1958, for a period of one year. At that time Garvin made certain written commitments. These included promises to submit current financial statements to defendant's zone office on a monthly basis, to maintain a wholesale line sufficient to carry 12% of his planning potential, to maintain sufficient working capital, to hire a full-time salesman, to erect a neon Rambler sign on his building, and to keep his premises in a clean condition. It was expressly stated that if he failed to adhere to these commitments, the franchise would not be renewed in 1959.

During the period of the renewal, several letters were sent to Garvin concerning these obligations. Representatives of the manfacturer questioned the accuracy of his financial statements and pointed out discrepancies in them. Defendant also expressed dissatisfaction with the amount of Garvin's working capital, the adequacy of his wholesale line, and his failure to hire a full-time salesman. Finally, on December 12, 1958, a letter was sent to plaintiff informing him that defendant did not intend to renew the agreement which was to expire on March 2, 1959.

Plaintiff concedes that in order to prove bad faith in the failure to renew the franchise, evidence of coercion, intimidation or threats thereof is essential. We have so held. Milos v. Ford Motor Co., 317 F.2d 712 (C.A.3, 1963). Moreover, Garvin admits that the commitments he made at the manufacturer's request in 1958 were reasonable, and that he was deficient in fulfilling them.[2]

[1]. The pertinent sections are §§ 1222 and 1221, which provide in relevant part:

"§ 1222. Authorization of suits against manufacturers; amount of recovery; defenses

"An automobile dealer may bring suit against any automobile manufacturer * * * and shall recover the damages by him sustained and the cost of suit by reason of the failure of said automobile manufacturer * * * to act in good faith in performing or complying with any of the terms or provisions of the franchise, or in terminating, canceling, or not renewing the franchise with said dealer * * *."

"§ 1221. Definitions

"As used in this chapter—

*   *   *   *   *

"(e) The term 'good faith' shall mean the duty of each party to any franchise, and all officers, employees, or agents thereof to act in a fair and equitable manner toward each other so as to guarantee the one party freedom from coercion, intimidation, or threats of coercion or intimidation from the other party: *Provided,* That recommendation, endorsement, exposition, persuasion, urging or argument shall not be deemed to constitute a lack of good faith." 15 U.S.C.A. §§ 1222 and 1221.

[2]. In his brief plaintiff at one point frankly concedes that he failed to fulfill these commitments. At another he states that he had substantially complied with them. In any event, the record clearly discloses that Garvin admitted at the trial that his financial statements were inaccurate. Moreover, it is not disputed that he failed to hire a full-time salesman.

He urges, however, that if either acts or threats of coercion or intimidation are proved, this deficiency is irrelevant.

The evidence upon which plaintiff relies includes the establishment of a competitive dealership in an area near him, his belief that defendant resented the fact that he bought his parts c. o. d., the insistence on a full-time salesman, the lack of cooperation by the manufacturer in supplying him with cars and parts, and the false charge that he was guilty of "bootlegging" cars.

We think there is nothing whatsoever in this evidence which would justify a finding that the failure to renew the franchise resulted from either acts or threats of coercion or intimidation by the manufacturer. The legislative history of the statute explicitly states that a manufacturer is not precluded from appointing an additional dealer in a community unless the appointment is used as an instrument of coercion or intimidation. H.R.Rep. No. 2850, 84th Cong., 2d Sess. (1956), 3 U.S.Code Cong. & Adm. News 4596, 4603 (1956). Plaintiff urges that the jury might infer bad faith because the testimony indicated that the franchises were located in a one-dealer town. The plain answer to this is that the record is completely devoid of any evidence to show that the new dealership was established as a device to coerce Garvin. In the absence of such a showing, plaintiff's argument is without merit.

Garvin stated that he bought automobile parts from the manufacturer on a c. o. d. basis in order to be certain that he would receive only those parts which he had requested. He testified that prior to this he had made his purchases on an open account, and had occasionally been shipped parts for which he had no need. From this it is urged that the jury could conclude that the refusal to renew the franchise was related to his c. o. d. purchasing method. The argument is patently fallacious. The record is barren of any evidence tending to prove that the manufacturer objected to this practice, and thus, such a conclusion by a jury would be pure speculation.

As we have previously noted, Garvin promised to hire at least one full-time salesman in 1958. Certainly, there is nothing arbitrary or unreasonable about this requirement. Indeed, the very purpose of the franchise was to assure the sale of automobiles. Hence, the manufacturer's insistence on the performance of this contractual commitment could not possibly be considered coercion or intimidation. Milos v. Ford Motor Co., 317 F.2d 712 (C.A.3, 1963); Woodard v. General Motors Corp., 298 F.2d 121, 128 (C.A.5, 1962).

Garvin also testified concerning two occasions when he had orders for cars but was unable to obtain them from defendant's Pittsburgh zone. However, he admitted that he was able to fill these orders by obtaining the cars from the Cleveland zone. Similarly, he complained of a delay in properly crediting his account, of occasional delays in receiving cars and parts, and of being required on one occasion to pay for anti-freeze before it was delivered to him. These isolated instances of ordinary business difficulties can in no sense be viewed as evidence of bad faith on the part of the manufacturer.

With respect to the "bootlegging" incident, defendant's zone manager, Lack, wrote to Garvin stating that he had been informed that one of the latter's cars was being displayed at a used car lot owned by one McCartney. Upon receiving this letter Garvin called Lack to explain that he had sent two cars to McCartney's to be cleaned before being put on display. Lack testified that he accepted this explanation, and there is no evidence that the decision not to renew the franchise was related to this incident.

In his brief, plaintiff refers to a failure of defendant's zone manager to assist him in reestablishing his credit when it was suspended by Commercial Credit Corporation. If this is intended to support the assertion of bad faith, it is utterly lacking in merit. Obviously, the statute does not require the manufacturer to aid in financing the operations of its

dealers. If anything, this episode tends to bolster defendant's contention that the decision not to renew was based on considerations of sound business judgment.

■■ We are led inexorably to the conclusion that there is no evidence in this record which would support a jury finding that the refusal to renew Garvin's franchise resulted from the failure of the manufacturer to act in "good faith" within the meaning of the Act. As the Fifth Circuit has said in Woodard v. General Motors Corp., 298 F.2d at 128:

"An automobile manufacturer is not precluded by the Act from including in its contracts with dealers, as the appellee has done here, requirements that dealers shall provide product representation commensurate with the good will attached to its trade name and facilitate the proper sale and servicing of its motor vehicles. The manufacturer is entitled to bargain for the protection of its good name, to provide for the trade acceptance of its wares, and to have a reasonable expectation that those who are marketing its cars have the facilities for coping with the sales efforts of those who are dealing in the products of competitors. [Citing case.] As is said in the House Report, the Act 'does not prohibit the manufacturer from terminating or refusing to renew the franchise of a dealer who is not providing the manufacturer with adequate representation. Nor does the bill curtail the manufacturer's right to cancel or not to renew an inefficient or undesirable dealer's franchise.' H.R.Rep. No. 2850, 84th Cong., 2d Sess. 9. * * *,"

See also, Augusta Rambler Sales, Inc. v. American Motors Sales Corp., 213 F.Supp. 889 (N.D.Ga.1963); Leach v. Ford Motor Co., 189 F.Supp. 349 (N.D. Cal.1960); Staten Island Motors, Inc. v. American Motors Sales Corp., 169 F.Supp. 378 (D.N.J.1959). This determination makes it unnecessary for us to consider defendant's alternative arguments, including that challenging the constitutionality of the statute.

The judgment of the district court will be reversed and the cause remanded with directions to enter judgment for the defendant.