**GLOBE MOTORS, INC., Appellee,**

v.

**STUDEBAKER–PACKARD CORPORATION, Appellant.**

No. 14304.

United States Court of Appeals Third Circuit.

Argued June 13, 1963.

Decided March 6, 1964.

646

John G. Buchanan, Jr., Pittsburgh, Pa. (Robert E. Mertz, Buchanan, Ingersoll, Rodewald, Kyle & Buerger, Pittsburgh, Pa., on the brief), for appellant.

Daniel B. Winters, Pittsburgh, Pa. (Arthur G. Stein, Stein & Winters, Pittsburgh, Pa., on the brief), for appellee.

Before HASTIE, GANEY and SMITH, Circuit Judges.

WILLIAM F. SMITH, Circuit Judge.

This action under the Automobile Dealers' Day in Court Act, 15 U.S.C.A. §§ 1221–1225, resulted in a jury verdict and judgment in favor of the appellee. The case was tried to the jury solely on the basis of alleged violations of the Act. At the close of all the evidence the trial judge reserved decision on appellant's motion for a directed verdict and the case was submitted to the jury. Within ten days after the return of the verdict the appellant moved for judgment in accordance with his earlier motion and, in the alternative, for a new trial. Fed. Rules Civ.Proc. rule 50(b), 28 U.S.C.A. The motion was denied and the present appeal followed.

■ This case differs from others heretofore decided in that the alleged wrong was not the termination of the dealer's franchise but the failure of the manufacturer "to act in good faith in performing or complying with * * * the terms [and] provisions of the franchise." The appellee charges specifically that the appellant (1) discriminated against the appellee and in favor of a competitor in the allocation of Studebaker "Lark" automobiles at a time when the car was in short supply and considerable demand; (2) imposed upon the appellee burdensome financial requirements; and (3) refused to sell and deliver Mercedes-Benz automobiles to the appellee for retail sale. It is charged that the conduct of the appellant violated the Act in that it was oppressive and coercive. We view the evidence, as we must, in the light most favorable to the appellee.

■ The statute was heretofore construed by this Court in the case of Milos v. Ford Motor Company, 3 Cir., 317 F.2d 712, at page 715 (1963), in which it was held:

"The Act grants a dealer the right to sue for damages by reason of the failure of the manufacturer 'to act in good faith in performing or complying with any of the terms or provisions of the franchise, * * *' 15 U.S.C.A. § 1222. The critical term is 'good faith' which is defined as 'the duty of each party to any franchise, and all officers, employees, or agents thereof to act in a fair and equitable manner toward each other so as to guarantee the one party freedom from coercion, intimidation, or threats of coercion or intimidation from the other party: Provided, That recommendation, endorsement, exposition, persuasion, urging or argument shall not be deemed to constitute a lack of good faith.' 15 U.S.C.A. § 1221(e)."

The statute did not provide a new remedy for breach of contract but created a new cause of action. An indispensable element of the statutory cause of action is not the lack of good faith in the ordinary sense but a lack of good faith in which "coercion, intimidation or threats" thereof are at least implicit.

The appellee argues that the term "lack of good faith" should be liberally construed and not confined to the context of coercion and intimidation. This argument was fully answered in the case of Milos v. Ford Motor Company, supra, 317 F.2d at 715. See also Garvin v. American Motor Sales Corporation, 318 F.2d 518 (3rd Cir. 1963); Pierce Ford Sales, Inc. v. Ford Motor Company, 299 F.2d 425 (2d Cir. 1962), cert. den. 371 U.S. 829, 83 S.Ct. 24, 9 L.Ed.2d 66; Woodard v. General Motors Corporation, 298 F.2d 121, 127, 128 (5th Cir. 1962), cert. den. 369 U.S. 887, 82 S.Ct. 1161, 8 L.Ed.2d 288; reh. den. 370 U.S. 965, 82 S.Ct. 1584, 8 L.Ed.2d 834. Acceptance of the appellee's argument would effectively deprive the statutory definition of "good faith" of its full import and perhaps raise serious doubts as to the constitutionality of the statute.

The inadequacy of the appellant's appendix and the failure of the appellee to print an appendix has made it necessary for us to review a voluminous transcript which is replete with matter not relevant to the questions raised on this appeal; in fact, the brief of the appellee refers only to the transcript. Since the parties apparently failed to agree upon a joint appendix, the evidence upon which the appellee seems to rely should have been printed in an appropriate separate appendix. LOCAL RULE 24(4) (e), 28 U.S.C.A. The cited rule was intended to aid this Court in its dispatch of business and should be followed.

After preliminary negotiations between one Adolph Fram, who later became president of the appellee, and authorized representatives of the appellant, the appellee was organized for the purpose of becoming a franchised dealer in the appellant's products. The franchise was granted on the appellee's written application. The franchise was on its face an integrated contract consisting of two agreements entitled "Dealer Sales Agreement," and "Dealer Sales Agreement Standard Provisions." The latter was incorporated in the former by specific reference.

The first agreement contains the following pertinent provision: "This Agreement terminates and supersedes all prior written, or oral agreements, if any, between Seller and Dealer relating to the subject matter hereof. * * * " This language is followed by the enumeration of several exceptions not relevant in the instant case. The second agreement contains the following pertinent provision: "Dealer * * * acknowledges that there is no other agreement or understanding, either oral or in writing, between the Dealer and Seller or Manufacturer affecting this Agreement or relating to the subject matter thereof."

The agreement authorized the appellee to purchase the appellant's products for resale in the area of "Pittsburgh in the county of Allegheny, state of Pennsylvania." However, the franchise was not exclusive; under the terms of the contract the appellant reserved the right to sell its products "to the others (including without limitation other dealers) without obligation or liability of any kind" to the appellee. The products which the appellee was authorized to purchase for resale were designated as "new passenger automobiles, trucks, and chassis bearing the trademarks 'Studebaker' or 'Packard' or the trade names 'Packard-Clipper' or 'Clipper,' parts, accessories and equipment therefor, and other products which from time to time may be offered by Seller to Dealer for resale." When the franchise was granted, the appellant was the exclusive national distributor of Mercedes-Benz automobiles but significantly no mention was made of them in the written agreements between the parties.

The franchise here in question was granted on January 20, 1958, and soon thereafter the appellee commenced operations on a limited scale. The limited operations were necessary because of the inadequacy of its facilities, particularly a suitable showroom. It appears from the testimony, viewed in the light most favorable to the appellee, that early in 1958 the representatives of the appellant

# 648

urged the appellee to expand its operations. The appellee, in anticipation of this expansion, leased a suitable building later constructed by a corporation of which Adolph Fram was the principal stockholder. The expanded operations commenced on November 8, 1958, and continued thereafter until February of 1960, when the appellee suspended business. The franchise was never formally terminated by either party although each had a right to do so under the express terms of the contract.

It appears from the evidence that the business relations between the appellant and the appellee were harmonious until early in September of 1958. Thereafter there occurred a series of incidents upon which the appellee here rests its charges. There is a sharp conflict in the testimony as to the nature of the incidents and the circumstances surrounding them. However, it does appear that there were differences of opinion as to the obligation of the appellee to maintain a minimum net working capital, the scope of the appellee's franchise, and the right of the appellee to an exclusive dealership in the territory. It further appears that in the latter part of September the appellant established a new dealership and granted a franchise to Constantin Motors, located approximately ten blocks from the appellee's place of business.

The question for decision is not whether the appellant acted unfairly or inequitably in its business relations with the appellee; the narrow question is whether the appellant failed to act in "good faith" as that term is defined in the Act.

█ The charge that the appellant discriminated against the appellee and in favor of a competitor in the allocation of "Lark" automobiles can be disposed of easily. The only evidence offered in support of the charge was completely lacking in probative value. Against this was the uncontradicted testimony that in each of the weeks, except one, embraced within the period during which there was a shortage of product, the appellee received more cars than did its competitor. If there was discrimination, it favored the appellee.

█ The charge that the appellee was compelled to meet burdensome financial requirements raises a slightly more difficult question.

The written application submitted by the appellee contains the following statement: "Net Working Capital Required 45,000.00 Available 25,000.00 Adequate yes." The franchise agreement contains the following pertinent provision:

"Dealer recognizes that in order to conduct Dealer's business on a profitable basis and in order to fulfill properly Dealer's obligations under this Agreement, it is necessary for Dealer to maintain adequate cash, NET WORKING CAPITAL and net worth, the amount thereof depending upon many factors, including among others, size of market, sales and service facilities required and anticipated volume. Since Seller has set standards for dealer cash, WORKING CAPITAL and net worth requirements based on Seller's past experience, Dealer agrees to establish and maintain Dealer's cash, NET WORKING CAPITAL and net worth in the amounts and forms which Seller deems necessary for the conduct of Dealer's business hereunder. IF THE AMOUNT OF DEALER'S CASH, NET WORKING CAPITAL OR NET WORTH IS NOW OR HEREAFTER INADEQUATE IN SELLER'S ESTIMATION FOR THE PROPER CONDUCT OF DEALER'S BUSINESS, DEALER WILL TAKE THE NECESSARY STEPS TO MEET SELLER'S APPLICABLE REQUIREMENTS WITHIN THE TIME DETERMINED BY SELLER." (Emphasis supplied).

This is a standard provision contained in the master contract, and there is no contention here that it was unreasonable.

At or about the time the appellee was making preparations to expand its business, and before it entered into occupancy of the new building, the appellant advised the appellee that it would be required to maintain a net working capital

of $45,000.00, the amount stated in the application. The amount was computed in accordance with a standard formula employed by the appellant in all cases. The reasonableness of the requirement is not disputed. However, the appellee contends that an inducement to its acceptance of the franchise was the assurance by the appellant that it would not be required to maintain its net working capital at the minimum level. The contention is supported by the testimony of Adolph Fram; this testimony, although contradicted by the appellant, must be accepted as true on this appeal.

The testimony was in direct contradiction of the express terms and provisions of the contract, particularly those hereinabove quoted. The fact that the appellant did not object to the admission of this evidence is of no significance. The question of admissibility aside, the franchise was an integrated contract and was not subject to parol alteration, modification or variance. This is the law of Indiana, which appears to be the place of contract, and also the law of Pennsylvania. Reynolds v. Louisville, N. A. & C. Ry. Co., 143 Ind. 579, 40 N.E. 410, 421 (1895); Swanson-Nunn Realty Co. v. Gentry, Ind.App., 186 N.E.2d 574, 578 (1962); Nash v. Thomas, Ind.App., 110 N.E.2d 355, 357 (1953); Universal Film Exchanges, Inc. v. Viking Theatre Corporation, 400 Pa. 27, 161 A.2d 610, 616 (1960); International Milling Company v. Hachmeister, Inc., 380 Pa. 407, 110 A.2d 186, 189, 190 (1955); Gianni v. R. Russel & Co., 281 Pa. 320, 126 A. 791, 792 (1924). The rule, although designated the "parol evidence rule," is one of substance. O'Brien v. O'Brien, 362 Pa. 66, 66 A.2d 309 (1949); Rest. Contracts, § 237, comment a; Williston on Contracts, 3d Ed., Vol. 4, § 631. It follows that under the law of either state the rights and liabilities of the parties must be determined under the written contract and without reference to prior or contemporaneous parol arrangements.

It is clear that under the contract the appellant had a right to insist on the appellee's compliance with his contrac-

tual commitment as to net working capital. The amount required was that stated in the application for the franchise and was admittedly reasonable. The action of the appellant cannot possibly be considered coercive or intimidative.

The appellant here contends, as it did in the court below, that under the franchise it was authorized to purchase Mercedes-Benz automobiles for resale in the designated territory. This contention is, of course, disputed by the appellee. The contention is supported by the testimony of Adolph Fram that on several occasions he was assured by the representatives of the appellant that automobiles bearing the trademark "Mercedes-Benz" were embraced within the phrase "other products which from time to time may be offered by Seller to Dealer for resale." It appears from the record that this testimony was received by the court below on the assumption that the franchise was ambiguous and that the testimony was admissible for the purpose of resolving the ambiguity. The assumption was clearly erroneous.

We find no ambiguity in the contract. It designates with precision the products available to the appellee as "new passenger automobiles, trucks, and chassis bearing the trademarks 'Studebaker' or 'Packard' or the trade names 'Packard-Clipper' or 'Clipper,' parts, accessories'", etc. In view of this specific identification of the automobiles by their trade names, it is difficult to perceive how it could be successfully argued that Mercedes-Benz automobiles were embraced within the all-inclusive term "other products." If assurances to the contrary were made to the appellee, they may not be relied upon to alter, vary or modify the written contract for the reasons hereinabove discussed. There is uncontradicted evidence in the record that automobiles bearing the trademark "Mercedes-Benz" were covered by a separate franchise; there was no such franchise granted to the appellee.

We have considered the other arguments advanced by the appellee in opposi-

tion to the contentions of the appellant and find them without merit. The constitutional question raised by the appellant is not reached because of our decision on the merits.

We are convinced upon our review of the record in its entirety that the evidence is clearly insufficient to support a factual determination that the appellant failed to act in "good faith" as that term is defined in the Act.

The judgment of the court below will be reversed and the action will be remanded with directions to enter judgment for the defendant.