William C. Hecht, Jr., J,
Defendants move, pursuant to CPLR 3212, for summary judgment dismissing the complaint, and plaintiffs have cross-moved for the same relief in their favor.
Plaintiffs, owners of a Studebaker dealer’s franchise, here seek to recover damages allegedly resulting from the cessation of automobile production in the United States by Studebaker Corporation in December, 1963 and the transfer of operations to Ontario, Canada.
The defendant Studebaker Automotive Sales Corporation (“ SASCO”) is a subsidiary of Studebaker Corporation, On May 1, 1962, the dealer sales agreement existing between plaintiffs and Studebaker Corporation was assigned to SASCO. Thereafter SASCO purchased Studebaker-manufactured automobiles from Studebaker Corporation and resold them to dealers *227 throughout the United States pursuant to orders submitted by the dealers. Studebaker-Packard Corporation is the former name of Studebaker Corporation, was erroneously named as a-defendant herein, and will not be further mentioned.
The first cause of action in the complaint alleges that Studebaker Corporation and SASCO conspired with one another to destroy the value of the plaintiffs’ dealership franchise by ending production of Studebaker cars, products, parts and accessories in the United States. The second cause of action asserts that “ Studebaker-Packard Corporation, its successors and assigns ” breached a contractual duty to plaintiffs to continue to manufacture Studebaker automobiles, parts, accessories and products in the United States. Since there is no substantive tort of “ conspiracy ” (see Goldstein v. Siegel, 19 A D 2d 489, 493 [1st Dept., 1963]), and plaintiffs have not pleaded the elements of any traditional tort, the court accepts the contention of both sides that the first cause of action is an attempt to plead a prima facie tort.
This attempt was not successful. There are no allegations of special damages. The complaint fails to set forth ultimate facts showing that the injurious action was prompted either solely or primarily by malice. The pleading also fails to set forth any acts constituting a conspiracy to injure plaintiffs (cf. Beardsley v. Kilmer, 236 N. Y. 80; Ruza v. Ruza, 286 App. Div. 767). Moreover, the evidence submitted herein demonstrates that there is no substantive merit to this first cause of action. Plaintiffs have admitted, in the course of pretrial examination, that they know of no facts from which to infer malice on the part of defendants other than the fact that Studebaker Corporation discontinued domestic production of its automobiles, moving its base of operations to Canada, and the fact that, since that move, the demand for Studebakers has dwindled to zero. Plaintiffs take umbrage at Studebaker’s timing of the public announcement of its actions but admit that, had Studebaker dealers been given as much as one month’s advance notice, the damages would not have been any less. Studebaker Corporation justifies its simultaneous announcement to dealers and public as required to insure compliance with rule 10b-5 of the Securities and Exchange Commission and the prompt disclosure requirements of the New York Stock Exchange.
The evidence submitted by defendants demonstrates that the transfer of operations to Ontario, Canada, was prompted, not by a desire to injure plaintiffs or any other franchised dealer, but by economic necessity, to save the corporate enterprise from *228 imminent, financial disaster. The economic crisis facing it in December, 1963, following a 10-year history of business losses, provided ample justification for Studebaker Corporation’s actions. Excerpts from the press interview of Studebaker Corporation’s principal officer reveal that an effort was made to assure the public that the quality of the product would not suffer in the move, and that a more economical product was the ultimate aim. Plaintiffs do not seriously dispute that Studebaker Corporation had economic justification for the move to Ontario, Canada. It is this fact of justification which precludes an action founded on prima facie tort; that incidental injury was suffered by plaintiffs is regrettable but not actionable. (See Reinforce, Inc. v. Birney, 308 N. Y. 164.)
As noted above, defendant Studebaker Corporation was not even a party to the franchise agreement in issue after May 1, 1962. Nevertheless, the second cause of action charges “ Studebaker-Packard Corporation, its successors and assigns ” with breach of contract duties imposed by said franchise agreement. No basis for this attempt to bind Studebaker Corporation is found in the franchise contract or the assignment agreement, nor do plaintiffs here attempt to justify the same.
The duty allegedly imposed upon all defendants jointly (both by express and implied agreement) was to continue manufacturing the product in the United States, apparently at maximum output, and to do whatever was necessary to maintain and further the good-will value of the Studebaker name and product. Plaintiffs make it clear that this duty was to be fulfilled without any regard to the fact that it might become economically unprofitable, or, indeed, that it might lead inevitably to bankruptcy. Plaintiffs rely, to establish express agreement, upon language contained in the preamble to the dealer sales agreement which recites that “ Seller manufactures [the] Studebaker and Packard motor vehicles which over a period of many years have earned the good will of the motor public. * * * Seller and Dealer recognizes that the success of each is dependent upon the continuation of this good will and that in order to maintain and further this good will, Seller must continue to manufacture only quality built motor vehicles and Dealer must sell and service such vehicles under fair policies and practices.”
Plaintiffs single out the underlined words as forming the contract basis for the claimed duty to continue manufacturing in the United States. Defendants argue that this preamble is not a part of the contract in question but merely a state *229 ment of purpose and that of itself the preamble does not impose duties on either party. Even if it were a binding provision, defendants argue, it does not even constitute an undertaking not to terminate the business entirely, much less constitute an undertaking not to discontinue production at any particular location. This court finds that plaintiffs’ strained interpretation does violence to the plain meaning of the words involved. The preamble does not address itself to the question of continuity of production regardless of circumstances, hut merely to the need for quality in the product produced. Moreover, there is no indication in the preamble or elsewhere in the body of the dealer sales agreement that “quality” of the motor vehicles built is dependent upon production in any particular geographical location.
It is interesting that plaintiffs concede that the automobiles subsequently manufactured at the Canadian plant are equal in quality to those which were manufactured in the United States prior to January, 1964. Plaintiffs continued to order and sell Studebaker vehicles after the move to Canada, and all such sales orders were duly filled by defendant SASCO.
Plaintiffs appear to suggest the existence of an implied agreement to continue manufacturing Studebaker automobiles in the United States, citing section 197 of the General Business Law, section 1222 of title 15 of the United States Code and Sidella Export-Import Corp. v. Rosen (273 App. Div. 490 [1st Dept., 1948]). The statutory authorities cited are inapposite. Secstion 197 of the General Business Law deals with termination of contracts. In the instant case, not only has there been no claim that the franchise agreement was terminated hut plaintiffs acknowledge that the agreement remained in effect after the move to Canada. Section 1222 of title 15 of the United States Code requires that a manufacturer * ‘ act in good faith ’ ’ in performing the terms and conditions of the franchise, or in terminating the same; but acting in ‘ good faith ’ ’ has come to mean “ without intimidation or coercion” (see Globe Motors v. Studebaker-Packard Corp., 328 F. 2d 645; Pierce Ford Sales v. Ford Motor Co., 299 F. 2d 425). There is no suggestion of intimidation or coercion on the part of these defendants. Likewise, Sidella Export-Import Corp. v. Rosen (supra) is not in point. There is neither allegation nor proof that defendants sought to avoid the franchise agreement by rendering it illegal. Nor have plaintiffs introduced any facts to show that the move to Canada was undertaken to avoid the franchise agreement.
*230 Neither by express nor implied agreement is there any limitation placed upon defendants with respect to location of manufacturing facilities. The fact that the move to Canada had injurious side effects, in that demand for Studebaker vehicles sharply declined, does not give rise to an action for consequential damages, especially in view of the clear economic justification for the move. Plaintiffs’ extended and quite irrelevant recitation of the expenditures undertaken by them to enhance the dealership neither alters nor improves their position. No claim of fraud or misrepresentation is lodged against defendants.
Plaintiffs can offer no legal precedent or authority for the position they espouse, but call upon the court to fashion a remedy for them. Defendants cite cases dealing with analogous (or contrasting) situations involving exclusive sales agency agreements, exclusive requirements contracts, distributorship contracts and the like, for the basic proposition that there can be no implied duty imposed upon defendants to surrender the right to make their own reasonable, good faith business decisions, or to go into involuntary bankruptcy just to suit the plaintiffs.
Defendants also cite a recent Federal case, Jim Barnett Motors v. Ford Motor Co. (355 F. 2d 502 [C. A. 5th, 1966]), which this court believes is very much in point. In that case, an Edsel dealer sought damages allegedly arising from Ford Motor Company’s termination of production of the Edsel automobile. In addition to a cause of action based upon violation of section 1222 of title 15 of the United States Code and a tort action founded upon a Georgia statute which permits a tort action based upon breach of a contractual duty, the Edsel dealer pleaded a breach of contract action based upon alleged violation of franchise agreement provisions strikingly similar to the provisions here in dispute. Defendant Ford Motor Co. moved for summary judgment based upon the undisputed fact of economic justification for termination of production. The District Court granted defendant’s motion, and the Fifth Circuit Court of Appeals unanimously affirmed that judgment. While there are many factual dissimilarities between the two cases, the similarity of the actions founded upon breach of an alleged contractual duty to continue to manufacture in the face of economic disaster inclines this court to view the Barnett case as very persuasive authority. Indeed, the Barnett case presents a much stronger casé for the dealer since the allegation there was that manufacturing was completely terminated without regard to the consequences to dealers and, indeed, involves *231 allegations of fraud and misrepresentation by the manufacturer which are not present in the instant case.
Plaintiffs have, in sum, failed to establish the merits of either cause of action, have failed to present any persuasive authority for the legal position they advance, and have failed to demonstrate the existence of any triable material issue of fact. Curiously, plaintiffs oppose defendants’ summary judgment motion on the grounds that triable fact issues exist while simultaneously cross-moving for summary judgment in their own favor. Neither of these inconsistent positions has validity.
(It is to be noted that following the submission of the instant motions, the parties confirmed that defendant Studebaker Corporation had now permanently discontinued all production of Studebaker automobiles in Canada; that a ‘ ‘ lifetime supply ’ ’ of parts is being maintained by defendant for 1966 and prior models; and that 536 Studebaker dealers in the United States have signed agreements to continue servicing Studebaker automobiles. This new fact or circumstance of termination of all production may well give rise to new claimed obligations between the parties; e.g., see paragraph 28 of the dealer sales agreement herein, relating to termination of the franchise agreement. However, the court does not deem the discontinuance of Canadian production in April, 1966 to be relevant to the issues raised in this action.)
Accordingly, defendants’ motion for summary judgment is granted and plaintiffs’ cross motion is denied.