SOUTHERN RAMBLER SALES, INC.,
Appellant,

v.

AMERICAN MOTORS CORPORATION
and American Motors Sales Corporation, Appellees.

No. 23058.

United States Court of Appeals
Fifth Circuit.

April 10, 1967.

Rehearing Denied May 8, 1967.

Gibson Tucker, Jr., Stewart J. Kepper, Tucker & Schonekas, New Orleans, La., for appellant.

Murphy Moss, Lemle & Kelleher, New Orleans, La., for appellees.

Before GEWIN and GOLDBERG, Circuit Judges, and SPEARS, District Judge.

GOLDBERG, Circuit Judge:

Southern Rambler Sales, Inc. (Rambler) was a New Orleans franchisee of American Motors Corporation and American Motors Sales Corporation (American) from January 1958 until July 1960, when at Rambler's request the franchise was terminated.

In its complaint, Rambler pleaded oral representations by American at the time of enfranchisement that the latter would grant no competing franchise in Rambler's area without first giving Rambler the right of refusal of these franchises and that competing franchises were granted without so advising Rambler. Rambler further pleaded that it was the victim of discriminatory delivery of automobiles in that American refused to allot to Rambler fast-selling popular models and instead loaded it with unsaleable models, thus weakening Rambler's economic position and forcing it to liquidate its business by piecemeal sales. According to Rambler, moreover, American should have cooperated with it in facilitating the sale by Rambler of its assets to a new American franchisee. Rambler sought in excess of $2,000,000 damages, which allegedly arose out of American's (1) general violations of the anti-trust laws, Section 1 of the Sherman Act, 15 U.S.C.A. § 1, and the Clayton Act, 15 U.S.C.A. §§ 12–27; (2) interference with the sale of Rambler's franchise dealership; (3) breach of the franchise contract; and (4) violation of the Automobile Dealers Day in Court Act, 15 U.S.C.A. §§ 1221–1225.

The deposition of Rambler's president had been taken on September 18, 1963. On April 2, 1965, American filed a motion to dismiss or, alternatively, for summary judgment with two supplementary affidavits. On April 28, 1965, the court granted summary judgment. Rambler thereafter filed a motion for new trial on May 10, 1965, and a motion for pro-

duction of documents on May 21, 1965, both of which motions were denied.

■ The causes of action involving (1) anti-trust violations, (2) interference with sale of Rambler's dealership, and (3) breach of contract were abandoned because not pursued by proof or briefed on appeal. See Iob v. Los Angeles Brewing Company, 9 Cir. 1950, 183 F.2d 398, 401 and Sugg v. Hendrix, 5 Cir. 1946, 153 F.2d 240, 242–243, where, in an action by a truck driver against a construction company for injuries sustained when the driver ws caught between his tank truck and defendant's tractor, the court held the defense of failure to exercise reasonable care was abandoned because of lack of argument and evidence.

The only possible cause of action justiciably before us here involves 15 U.S. C.A. §§ 1221–1225, commonly known as the Automobile Dealers Day in Court Act. This case in part tests whether the Automobile Dealers Day in Court Act gives the dealers anything more than its name implies. More precisely, this suit is bottomed on the failure of American

to act in "good faith" as that term is defined in the statute.[1]

■ The Rambler and American franchise agreement gave to Rambler a nonexclusive franchise, afforded American wide latitude in vehicle allocation, and absolved it from responsibility for failure to deliver and for delays in filling orders.[2] Rambler's theory is that these contractual provisions are modified by the Automobile Dealers Day in Court Act to the end that contractual rights of American cannot be used to coerce or intimidate Rambler into its economic demise. However valid this theory may be, the beneficent balm of protection succoring automobile dealers under the Act has been sparingly and sparsely spread. We find no reported case in which a dealer has a court-approved judgment. The statute recognizes that a valid contract can be an engine of oppression, but two aspects of the Act's protection must be considered. First, oral understandings, such as the one sought to be proved by Rambler, which are in conflict with the written franchise agreements are not made enforceable by the Act. In Alfieri

1. The applicable sections are 1222 and 1221, which provide in pertinent part:
 "§ 1222. Authorization of suits against manufacturers; amount of recovery; defenses
 "An automobile dealer may bring suit against any automobile manufacturer * * * and shall recover the damages by him sustained and the cost of suit by reason of the failure of said automobile manufacturer * * * to act in good faith in performing or complying with any of the terms or provisions of the franchise, or in terminating, canceling, or not renewing the franchise with said dealer * * *."
 "§ 1221. Definitions as used in this chapter—
 "(e) The term 'good faith' shall mean the duty of each party to any franchise, and all officers, employees, or agents thereof to act in a fair and equitable manner toward each other so as to guarantee the one party freedom from coercion, intimidation, or threats of coercion or intimidation from the other party: *Provided*, That recommendation, endorsement, exposition, persuasion, urging or argument shall not be deemed to constitute a lack of good faith." 15 U.S.C.A. §§ 1222 and 1221.

2. The relevant parts of the Dealer Franchise Provisions read as follows:
 Sec. One: "As long as this Franchise Agreement shall remain in effect, Dealer shall have the non-exclusive right to purchase from Zone and resell motor vehicles and Manufacturer's parts and accessories."
 Sec. Four: "Zone shall not be liable or responsible in any manner to Dealer for failure or delay to fill any order placed hereunder or for other failures to perform when same is due to or the result of strikes or other labor troubles, fires, floods, material or labor shortages, embargoes, stoppages in transit, direct or indirect acts, regulations or orders of Government, the Zone's allocation of motor vehicles and other products to and among dealers and other customers on such basis as Zone may determine, war, sabotage, acts of God or the public enemy, and other causes beyond the control of the Zone and/or the Manufacturer."
 Sec. Eight: "Zone may ship motor vehicles, parts, accessories and other merchandise ordered hereunder by any means of transportation and from whatever point it may select."

v. Willys Motors, Inc., E.D.Pa.1964, 227 F.Supp. 627, 629, an action under the Act where the dealer alleged, inter alia, that the written franchise agreement had been orally modified to provide an exclusive-dealing arrangement, it was pointed out:

> "A study of the legislative history shows that the use by Congress of the word 'written' in defining the term 'franchise' was not inadvertent but resulted from a careful and deliberate consideration of the entire matter. U. S.Code Cong. and Adm.News 1956, pp. 4596, 4601.
>
> > '* * * The words "understanding or arrangement" have been deleted in order to safeguard against the possible inclusion of anti-competitive trade arrangements between the manufacturer and the dealer, such as arrangements which might limit the location of new dealers.'
>
> In view of this it is evident that one of the main objectives of the choice of language by the Legislature was to guard against such oral understandings or agreements upon which the plaintiff relies."

Here too, Rambler's allegation of such oral representations is not admissible.

■■ Second, in each case arising under the Act, good faith or the lack of it must be determined in the context of "coercion, intimidation, or threats of coercion or intimidation from the other party." It is here that Rambler failed to carry its burden. The focal point of Rambler's complaint is found in its allegations that American, "acting in a coercive, unfair and inequitable manner," discriminated against Rambler with respect to allocation of vehicles thereby leading it to the forced sale of its business.[3]

■■ The statute, it must be noted, does not afford Rambler a statutory right or formula for allocation or delivery of certain cars. In Augusta Rambler Sales, Inc. v. American Motors Sales Corp., N.D.Ga.1962, 213 F.Supp. 889, where a dealer complained under the Act of one of these same defendants' failure to deliver orders and of excessive shipments of automobiles of undesirable colors and models, the court held that nothing in the contract obligated American to furnish any number of cars at any particular time and that no prohibitive acts of coercion, intimidation, or threats were thus presented. Similarly, no unfair allocation under the Act is shown where a dealer receives more cars than its competitor during a period of production shortage, Globe Motors, Inc. v. Studebaker-Packard Corporation, 3 Cir. 1964, 328 F.2d 645, or where a dealer gets a higher percentage of the cars allotted in his area than he is thereafter expected to sell, Leach v. Ford Motor Co., N.D. Cal.1960, 189 F.Supp. 340. As pointed out in Bateman v. Ford Motor Company, E.D.Pa.1962, 204 F.Supp. 357, automobile dealers often cannot secure all the fast-moving models they desire, but sometimes receive harder to sell models.

■■ Thus, there being no right to cars of certain color, body, or style, Rambler must demonstrate that degree of bad faith allocation which has coercive and intimidating effects. As the court said in *Globe,* supra, 328 F.2d at 648,

> "The question for decision is not whether the appellant acted unfairly or inequitably in its business relations with the appellee; the narrow question is whether the appellant failed to act in 'good faith' as that term is defined by the Act.

---

3. Paragraph X of Rambler's complaint is as follows:

"That once having granted these franchises, defendants immediately began acting in a coercive, unfair and inequitable manner, in failing and refusing to furnish complainant with the vehicles that were salable and/or ordered by it, but during the same period did furnish the said type of vehicles to complainants' competition, Bernie Dumas Buick Rambler, Inc., and Colonial Rambler, Inc., all to the detriment of complainant, who was then a recognized, reputable and successful franchise dealer." (R. 9).

"The charge that the appellant discriminated against the appellee and in favor of a competitor in the allocation of 'Lark' automobiles can be disposed of easily. The only evidence offered in support of the charge was completely lacking in probative value. Against this was the uncontradicted testimony that in each of the weeks, except one, embraced within the period during which there was a shortage of product, the appellee received more cars than did its competitor. If there was discrimination, it favored the appellee."

 Finally, the right of a dealer under the Act to an exclusive dealership in his territory has been specifically rejected. In *Globe,* supra, establishment of a competitive dealership ten blocks away was held not to be failure to act in good faith; moreover, the legislative history of the Automobile Dealers Day in Court Act instructs us that such competitive dealerships were *not* to be considered evidence of bad faith.

"The bill does not freeze present channels or methods of automobile distribution and would not prohibit a manufacturer from appointing an additional dealer in a community provided that the establishment of the new dealer is not a device by the manufacturer to coerce or intimidate an existing dealer. The committee emphasizes that the bill does not afford the dealer the right to be free from competition from additional franchise dealers. Appointment of added dealers in an area is a normal competitive method for securing better distribution and curtailment of this right would be inconsistent with the antitrust objectives of this legislation. Under the bill, a manufacturer does not guarantee the dealer profitable operation or freedom from depletion of investment." H.R.Rep.No. 2850, 84th Cong.2d Sess. (1956), 3

U.S.Code Cong. & Adm.News, pp. 4596, 4603–4604 (1956).

This language was cited with approval in Garvin v. American Motors Corporation, 3 Cir. 1963, 318 F.2d 518, where a dealer attempted to prove a violation of the Act by the manufacturer's establishment of a competitive dealership in an area near him. As is also true with the case at bar, the court in *Garvin* pointed out that:

" * * * the record is completely devoid of any evidence to show that the new dealership was established as a device to coerce Garvin. In the absence of such a showing, plaintiff's argument is without merit." 318 F.2d at 520.

Even the exaction of minimum sales accompanied by threats to establish competitive dealerships has been held not to be coercive per se. Victory Motors of Savannah v. Chrysler Motors Corp., 5 Cir. 1966, 357 F.2d 429. There, the court emphasized that even if Chrysler had established a new dealership, Victory still would have to show that its establishment was coercion or intimidation amounting to bad faith on the part of Chrysler.

With this legal setting, we turn to the summary judgment aspects of this case. Chronology and the time span are helpful here. The complaint was filed on March 28, 1961. The deposition of Grady, Rambler's president, was taken on September 18, 1963. Grady's answers on deposition lack specificity and are suppositious, speculative, conclusory, and unfactual.

If Rambler suspected American of discrimination or establishing competition of such quality as to amount to bad faith, the underlying facts were not inaccessible. Rambler had from May until August to employ the tools and devices of discovery if the facts were not otherwise discernible but failed to do so.[4] Finally, on

---

4. The trial court gave Rambler every chance to offer countervailing affidavits. Even after the initial decision granting the summary judgment, the following colloquy took place:

"THE COURT:
What I want you to do, so as to keep the record straight, is to file an application for a new trial, and annex to that application for new trial, and annex to

April 2, 1965, American moved for summary judgment, supported by the affidavits of Chalfant and Daley, who specifically stated that no representations were made to Rambler with respect to car allocation, that Rambler was never threatened, intimidated, or coerced to do anything, that they were not aware of any peculiar problems had by Rambler in obtaining automobiles which were not common to all dealers and that in fact Rambler received a greater percentage of automobiles than its proportional share as a dealer during each of the model years. Summary judgment was granted on April 28, and only after this grant did Rambler move for permission to discover documents.

■ The tools and devices of discovery are more than options and opportunities. Rule 56 expressly exacts them by negative compulsion on pain of judicial denouement—saying in effect, "Meet these affidavit facts or judicially die." [5] Diligence in opposing a motion for summary judgment is required, for such a motion with supporting logistics and gear does not lose its thrust by an opponent's complacence. In Robin Construction

Company v. United States, 3 Cir. 1965, 345 F.2d 610, 613–614, the Court said:

" * * * [A] party who resists summary judgment cannot hold back his evidence until the time of trial: [quoting from Engl v. Aetna Life Ins. Co., 2 Cir. 1943, 139 F.2d 469, 473] ' * * * [W]e have often held that mere formal denials or general allegations which do not show the facts in detail and with precision are insufficient to prevent the award of summary judgment.'

" * * * Indeed, subdivision (f) of Rule 56, by affording an opportunity for continuance of an application for summary judgment so as to permit affidavits to be obtained or depositions to be taken or discovery to be had, indicates that absent such effort it is idle to attempt to shrug off the facts which his adversary has presented."

Accord, Schneider v. McKesson and Robbins, 2 Cir. 1958, 254 F.2d 827; Berry Brothers Buick, Inc. v. General Motors Corp., E.D.Pa.1966, 257 F.Supp. 542. Under the circumstances here, Rambler had an obligation to attempt to extract and sequester facts from American.

---

that whatever affidavits you must direct, if you can, and set forth these salient facts that Mr. Moss has argued here today.

MR. TUCKER:
Yes, sir.

THE COURT:
And, after all, we are not running a nursery school here, and we are trying to do our best to do justice, and do what is fair, and I am giving you this additional opportunity to get a rehearing, and we will set it for the next couple of weeks.

MR. TUCKER:
Thank you. Very well.

THE COURT:
And don't forget a supplemental memorandum, also, in support of your affidavits."

5. F.R.Civ.P. 56 says in part:
"(e) Form of Affidavits; Further Testimony; Defense Required. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."
"(f) When Affidavits Are Unavailable. Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

This it sought to do almost a month after the entry of summary judgment by way of a motion to produce. The motion came too late, and the trial court's discretion after the passage of so much time should not be disturbed. In Englehard Industries, Inc. v. Research Instrumental Corp., 9 Cir. 1963, 324 F.2d 347, the Court had before it a summary judgment in which nothing in the record countered the showing by Research that it did not infringe Engelhard's patent but in which Engelhard finally offered controverting affidavits after the motion was granted. In upholding the summary judgment and the trial court's refusal to allow the affidavits, the Court said:

"On this appeal Engelhard has repeatedly referred to four other affidavits, asserting that they clearly show the existence of material issues of fact, thus manifesting the error of the trial court in rendering summary judgment. The difficulty with this argument is that these affidavits were not filed at or before the time fixed for the hearing on the motion for summary judgment, as required by Fed.R.Civ.P. 56(c). They were tendered after that matter had been decided, with Engelhard's petition for rehearing, and were rejected. Since the petition was addressed to the discretion of the trial court [George P. Converse & Co. v. Polaroid Corp., 242 F.2d 116 (1st Cir. 1957)], Engelhard was obliged to show not only that this evidence was newly discovered or unknown to it until after the hearing, but also that it could not with reasonable diligence have discovered and produced such evidence at the hearing. But Engelhard made no showing of any kind." Engelhard, supra, at 352.

 The trial court in the case at bar was more than patient in awaiting Rambler's controverting affidavits or efforts in any direction. It did not abuse its discretion in refusing to order the production of documents by American after summary judgment had been granted. Lawsuits are not timeless or aeonian, and although aging is not an altogether unhappy process, it is not a desirable aspect of judicial proceedings. All things must end—even litigation.

Affirmed.