444

**Aurthine WELLS, Claimant,**

v.

**Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Respondent.**

Civ. No. 1557.

United States District Court
W. D. North Carolina,
Charlotte Division.

Argued Aug. 28, 1962.

Decided Oct. 11, 1962.

S. Dean Hamrick, Charlotte, N. C., for claimant.

William Medford, U. S. Atty., Asheville, N. C., for respondent.

CRAVEN, Chief Judge.

On April 25, 1958, claimant filed an application for Child's Insurance Benefits under the Social Security Act. The Hearing Examiner decided adversely to her. The Appeals Council refused to review the Examiner's decision. This court now reverses the Hearing Examiner.

Claimant filed for benefits under section 202(d) of the Social Security Act. This section of the Act provides for benefits for a child dependent upon a parent who is entitled to old-age insurance benefits when such child is "under a disability which began before (she) attained the age of eighteen * * *". Claimant's mother, Kate S. Wells, is currently receiving old-age insurance benefits. Claimant alleges that she is disabled within the purview of the Act due to epilepsy and resultant nervous disorders. Her allegation is, indeed, supported by substantial evidence. The Examiner's decision is not.

Aurthine Wells, claimant, was born January 17, 1922. She suffered her first epileptic seizure when she was twelve or fourteen years of age. At about the same age she witnessed her father's attempted suicide. Shortly thereafter a man working at her home attempted to criminally assault her. It took her two years to complete the ninth grade of school (which is the extent of her formal education) due to frequent attacks of epilepsy and nervousness.

Because of her nervous disorder, she has been discharged from every job she has taken. There is uncontradicted evidence that she is *willing* to work. She is unmarried, unemployed, and lives with her mother.

Claimant's medical history reveals that when her seizures were diagnosed as epilepsy at age fourteen, the examining physician also noted that she was "tense and nervous". As early as *1939*, Dr. Crispell of Duke University was of the opinion that claimant suffered from a psychogenic condition and recommended that she be institutionalized. He had examined her when she was only sixteen years old.

It is noteworthy that practically *every* medical report in the record is agreed that (1) claimant has a history of epileptic-type seizures dating from about age fourteen, controllable to some extent by medication, and (2) claimant is the victim of some type of neurotic condition. A synopsis of the medical reports in the record follows:

(1) Baptist Hospital—1946
Grand and petit mal epilepsy and superimposed psychoneurotic overlay were diagnosed. She was placed under psychiatric care.

(2) Mountain Sanitarium and Hospital—1943
The diagnosis and medical observations indicated epilepsy (petit mal); always very nervous; tremors during and following attacks and when nervous.

(3) Duke Hospital—1946 (Psychological report)
Claimant's test performance showed a dull normal intelligence. The examining psychologist stated that she was "unable to function as an adequate adult personality in the presence of her dominating mother".

(4) Mercy Hospital—1949
The diagnosis and observation revealed epileptic type fits; "a very nervous, neurotic female."

(5) Veteran's Administration—1958
This medical report shows claimant's condition to be as follows: psychoneurosis, hypochondriacal type, chronic, severe; epilepsy, currently controlled by medication; encephalograph reading compatible with some convulsive disorder; degree of disability—*currently complete*. Miss Wells is neurotic and will never be different as long as her dominating mother lives.

Claimant's employment record began in 1948. For several years she worked as a part-time employee of the Starr Press, Inc. A letter from that company to the Social Security Administration Office states that her work there was terminated "because of her health" and expresses the opinion that she is "incapable of holding a regular job due to her nervous condition."

A Mrs. Jarrett hired claimant as a part-time employee for office work over a period of six to eight years. Mrs. Jarrett testified at the hearing that claimant was very nervous and just couldn't do satisfactory work; that she (Mrs. Jarrett) "finally * * * just gave up". Mrs. Jarrett also testified that claimant was given a job in a department store and was discharged after about three weeks because "it made her so nervous she couldn't stand it." Claimant attempted to work in her home as a telephone solicitor for several insurance companies. She was unable to do this work also. Additionally, two physicians expressed the opinion that claimant was unable to work.

Section 202(d) (1) of the Social Security Act (42 U.S.C.A. § 402(d) (1)) makes the following provision:

"Every child of an individual entitled to old-age insurance benefits * * * (shall) * * * if such child (A) has filed application for child's insurance benefits, (and) (B) at the time such application was filed was unmarried * * * and was under a disability as defined in section 423(c) of this title which began before he attained the age of eighteen, * * * be entitled to a child's insurance benefit * * *"

The "disability" that is required to be shown before the applicant is entitled to benefits is defined in section 223(c) (2) of the Act (42 U.S.C.A. § 423(c) (2))

as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration."

Section 205(g) of the Act (42 U.S.C.A. § 405(g)) provides for judicial review of "any final decision of the Secretary" of Health, Education and Welfare. When the Appeals Council of the Social Security Administration refuses to review the Hearing Examiner's decision denying claimant's application for benefits—as it did in this case—the Examiner's decision becomes the "final decision of the Secretary". Conley v. Ribicoff, 294 F.2d 190 (9 Cir. 1961).

When the court reviews an administrative proceeding, its decision is to be based upon the record as a whole. It must consider the evidence in the record that is unfavorable as well as that which is favorable to the agency decision and then determine whether the agency decision is, in the light of the whole record, supported by substantial evidence. If it is not, it must be reversed. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1950).

In the instant case, it was incumbent upon claimant to establish that she was "disabled" within the meaning of the Act prior to the time she became eighteen years of age and continued to be under a disability until the date upon which she filed her application for benefits. The record clearly establishes that claimant was so disabled. The medical evidence cited above unquestionably establishes that claimant has been unable "to engage in any substantial gainful activity" since she was about fourteen years of age. Her "disability" began while she was in school. It took her two years to complete the eighth grade and another two years to complete the ninth grade. During parts of those years she was unable to attend school at all due to the seizures from which she was suffering and nervous disorders. Though the seizures to which claimant was subject have been pretty well controlled for seven or eight years by medication, there is abundant evidence in the record of other incapacities, both mental and physical, which began prior to the time she was eighteen years old or are connected with conditions then suffered by her and continued to the date on which she filed for benefits.

The Hearing Examiner erroneously concluded that there was "no evidence that the psychoneurosis * * * was present before it was diagnosed on September 19, 1958." Superimposed psychoneurotic overlay was diagnosed in October 1946 at the Baptist Hospital. As has been earlier stated, Dr. Crispell was of the opinion in *1939* that claimant had a psychogenic disorder.

Apparently the Hearing Examiner viewed claimant's epileptic condition and her mental and nervous conditions as separate and distinct maladies. This was clearly erroneous. The medical reports are replete with references to *both*. Dr. Crispell distinctly interrelated them; so did the Baptist Hospital report. While diagnosing claimant's condition as being epileptic, both Dr. Kendall and the staff at the Mountain Sanitarium also observed that she was "tense and nervous". Obviously the several conditions are and have been inseparable and must be considered together rather than separately. Each is tied to the other and the combination has disabled the claimant.

The Hearing Examiner cited in his opinion, Cecil and Leob Textbook of Medicine, 9th Edition, page 1494, wherein it is stated, *inter alia*, (re epilepsy): "Many patients suffer more from the fear of seizures than from the seizures themselves * * * Patients need to be protected * * * from the overprotection of relatives. Secrecy is a corroding influence for the person with seizures and his family." This case stands as a perfect example of these propositions. Following are evidentiary matters that should have been so considered in relat-

ing claimant's various symptoms one with the other:

(1) Claimant testified that she was *afraid* to stop taking the medicine that was at least partially controlling her seizures. Her fear of the seizures is again pointed up in the Veteran's Administration medical report wherein it is stated that claimant will not talk about her epileptic history.

(2) That claimant has endured overprotection from her mother is spread throughout the record. It is definitely borne out in two medical reports and in her mother's testimony at the hearing.

(3) That claimant's epileptic condition was kept a secret from her is obvious from the testimony at the hearing that the diagnosing physician told the mother but not claimant what was wrong with her. The Veteran's Administration report states that claimant allegedly had been refused such knowledge for fear it would worry her.

Perhaps the over-all effect of these factors is best summarized in the statement of a departmental interviewing agent: "She said that she is ashamed of herself when she has the spells and this evidently is reflected in the nervous condition that she has. She was very definite about wanting to be able to work and be like other girls."

The entire record, when interrelated and taken as a whole, clearly supports a conclusion, contrary to that of the Hearing Examiner, that claimant is disabled within the definitive terms of section 223 (c) (2) of the Social Security Act (42 U.S.C.A. § 423(c) (2)) and that such disability falls within the purview of section 202(d) (1) of the Act (42 U.S.C.A. § 402(d) (1)). The findings and conclusions of the Examiner simply are not supported by substantial evidence. Any lingering doubt to the contrary is quickly eradicated by the statement of an officer of the Employment Security Commission of North Carolina, a public employment agency, that "it is impossible for our office to find Miss Wells any work."

"If there is no market for the services [the claimant] is able to render, then he is truly disabled within the meaning of the statute." Ferran v. Flemming, 293 F.2d 568, 571 (5th Cir. 1961).

The court adjudges on the record as a whole that the findings of the Hearing Examiner are not supported by substantial evidence and must be reversed.