**Linwood T. SHAW, Plaintiff,**

v.

**Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. 1064.**

United States District Court
M. D. Georgia,
Columbus Division.

June 29, 1965.

Vincent P. McCauley, Columbus, Ga., for plaintiff.

Floyd M. Buford, U. S. Atty., Macon, Ga., for defendant.

ELLIOTT, District Judge:

This is an action brought to obtain judicial review of a decision of the Secretary of Health, Education and Welfare denying the Plaintiff's claim for Social Security disability benefits. The decision of the Secretary referred to holds that the Plaintiff failed to establish that he became "disabled" within the meaning of the Social Security Act during the effective period of his disability application. There is no controversy regarding what is required of the Plaintiff in this situation. He must show that he became disabled during the period prior to January 9, 1963 in order to establish a period of disability under § 216(i) of the Social Security Act in order to qualify him for disability insurance benefits under § 223 of the Act. The issue in this case is whether or not there is substantial evidence in the record to support the "final decision" of the Secretary that the Plaintiff did not meet the statutory test of disability during the applicable period.

The Plaintiff is now 41 years of age. His physical troubles began when he was in a severe accident in 1941, at which time he received an injury to his head (severe concussion) which rendered him unconscious for a considerable period of

time. The after-effects of this injury became apparent in 1943, at which time he was in the Army. After he had been in the Army about six months he suffered his first epileptic seizure and as a result of this he was granted a medical discharge. He had no more seizures for a while, but about seven years ago the seizures came upon him again and they have recurred at varying intervals since that time. The seizures are usually of the severe grand mal type, during the course of which he loses consciousness and does violence to his person. Sometimes he has seizures of a less severe type. In the course of these less severe seizures he is not rendered unconscious. At the time he lost his last job, which was in the fall of 1962, he weighed about 165 pounds. His present weight is 137 pounds, although his height is 5 feet 11 inches. In addition to the epileptic seizures, which will be discussed in more detail later in this opinion, he has for several years suffered from a stomach disorder diagnosed as duodenal ulcers which from time to time produces bleeding and for which he takes constant medication, and he is also afflicted with an ailment known as Todd's paralysis which affects his right arm and his right leg and the right side of his mouth.

The Claimant's education ended in the sixth grade and he was not able to complete the sixth grade until he was 15 years of age, it being necessary for him to repeat one or more grades. After he was discharged from the Army he worked for a short period for a brother who operated a garage. He later got a job in a radio and television repair shop sweeping the floors and doing general janitorial work. The man who operated the shop taught him something about repairing radio and television sets. He also taught him how to operate a projector in a small motion picture theatre, which job he held at night for a time. He later got a job with a television repair shop, but one day while on the job he had one of his violent seizures and an expensive television set fell over on him while he was on the floor and the pro-

prietor would not allow him to work on the premises any longer. He got a Civil Service job at nearby Fort Benning where he was doing some repair work on some communications equipment and for a while he succeeded in concealing from his supervisor the fact that he was subject to epileptic seizures, but then one day he had a seizure while on the job and his supervisor allowed him to resign from his position instead of firing him. He then got a job in Columbus trying to operate a small radio repair shop for another man who was the owner. Claimant was the only one working in the place. After a few weeks the owner came in one day and found him on the floor suffering an epileptic seizure and he was discharged. He has not been able to get a job since September, 1962. He lives with his wife and 4 children. For ten years prior to September, 1962 he had been making payments on a small home, but since he lost his last job in September, 1962 he has lost the home and the family's sole support is assistance received from the State Welfare Department, which amounts to about $180.00 a month for the entire family. Since losing his last job in September, 1962 the seizures have continued and have become more frequent and he is also plagued with severe headaches from time to time in addition to the stomach trouble and partial paralysis.

The Claimant has not had all of the medical attention which he has needed because he simply has not had the funds with which to obtain it. He has been admitted to Veterans Hospitals for treatment on at least two occasions. The last time he was required to remain in the hospital for a period of about two months. At the time the Examiner conducted the hearing in this case the Claimant was on a six months conditional leave from the Veterans Hospital and was required to report to the hospital by telephone once a week concerning his condition. The Veterans Administration supplies him with drugs which he is required to take three times a day in an attempt to control the epileptic seizures

and they also provide him with some other medication which he takes for the stomach ulcers. He is required to have the drug dilantin, which is the drug used in connection with epilepsy, with him on his person at all times and he carries a card with him which was given to him by the Veterans Administration so that if he has a seizure at any time this card will inform any attending physician as to what medication he is taking.

As heretofore noted, most of his seizures are of the grand mal type. On one occasion his wife found him lying unconscious on the bathroom floor in the home bleeding from the nose and from the mouth. On another occasion he had a seizure while coming down a flight of stairs and fell all the way to the bottom. When he has one of his severe seizures he is unconscious for periods of time ranging from 30 minutes up to an hour and during these seizures he sometimes rips his clothes off and chews his tongue and loses control of his bladder and bowel functions. Sometimes after he has recovered from the actual physical seizure there will be periods of two or three days when he sits and stares into space during his waking hours with little evidence of any consciousness of what is going on about him. Also, during periods following a severe seizure he will do and say things concerning which he has no later recollection. There have been instances when, during a period of a day or two following a severe seizure, he has had conversations with people in which he has represented himself to be an engineer or a contractor, or some other person of importance, and when later advised concerning such conversations he has had no recollection of them. He enjoys fishing, but his doctors have forbidden him to go near any water unless someone is with him at all times and his doctors have also advised him not to attempt to walk in the streets where there is any heavy traffic because of the danger involved in the event he should have a seizure. The result is that when he goes to walk or when he goes fishing it is necessary for someone to accompany him.

He is not allowed to go anywhere alone. He was last admitted to the Veterans Hospital in November, 1963 and the clinical summary having to do with his hospitalization at that time shows that he had about 23 seizures of varying intensity during the year immediately prior to his admission. He was in the hospital on that occasion until January 13, 1964 and between January 13, 1964 and April 22, 1964 (the date on which the Examiner conducted the hearing in this case) he had four epileptic seizures. Indeed, he had one seizure while he was in the hospital, during the course of which he fell from the bed to the floor. The last severe seizure he had prior to the hearing occurred during the first week in April, 1964. In addition to the severe seizures which have been described, he has other relatively light attacks and in those instances he does not lose consciousness, but he jerks and "trembles all over". The paresis or paralysis which affects his right side causes his right hand to tremble and it often occurs that he cannot hold anything in his right hand. This also causes his right leg to collapse from time to time. He sometimes will lose control of his right leg for a period as long as 10 or 15 minutes and this has occurred about once a month during the last year. When he does lose the use of his right leg for these brief periods this is followed by a period of weakness in that leg which lasts for several days.

The medical evidence in this case consists of clinical reports made by physicians who have had occasion to observe this man. Some of the statements made by these physicians tend to support the finding made by the Examiner and the conclusion reached by the Secretary that this man is not "disabled" but other portions of the medical record raise serious doubt whether this evidence can be considered "substantial". When it becomes the duty of this Court to review an administrative proceeding our decision must be based upon the record as a whole and not simply upon those parts of its regarded as favorable to the Secretary's

conclusion. It is our duty to consider the evidence in the record that is favorable as well as that which is unfavorable to the agency decision and then determine whether the agency decision is, in the light of the whole record, supported by substantial evidence and if it is not it should be reversed. Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

Upon reviewing this record the first thing that impresses us is that there was an initial erroneous evaluation of this man's condition by the Hearing Examiner in that the Examiner considered the epileptic seizures, the stomach ulcers, the partial paralysis, the severe headaches and the anxiety state of the claimant as being separate and distinct ailments having no connection one with the other, and since the Examiner concluded that no one of these things considered separately was enough to render the Claimant disabled, he, therefore, was not disabled. The medical reports on this man are replete with references to *all* of these ailments. They are catalogued in the clinical reports from the Veterans Administration and they all together make up one complete picture and that picture conveys to this Court a definite impression of disability.

But even if this man's various ailments are to be considered separately, we find ourselves convinced that his epileptic condition is within itself ample to sustain a finding that he has carried the burden of proving disability. To say that a man who is subject to frequent severe epileptic seizures interspersed with less severe seizures is not prevented thereby from engaging in substantial gainful activities is simply to ignore the realities of life. He has lost every job he has had because of epilepsy and the only way he could secure any employment would be to successfully conceal his epileptic history and then it would last only until he had his next seizure. The harsh fact that must be recognized is that a convulsive seizure can occur at any time and at any place and when such an attack does occur it is imperative that the claimant be in the presence of some understanding person who knows what steps to take to protect him. His very life may depend upon such action, and to expect that a prospective employer would ignore these considerations and jeopardize the safety of his other employees and ignore other pertinent considerations is simply to indulge in theory.

■■ We are not impressed by the medical evidence upon which the Examiner based his conclusion. We realize that Dr. D. F. Davis says with regard to the Claimant that, "It is very doubtful that he is totally and permanently disabled", but the Claimant does not have the burden of proving that he is totally and permanently disabled. He has the burden only of proving that he is disabled within the meaning of the Social Security Act and that is not the same as total and permanent disability. We note also that this same physician, Dr. Davis, says that, "The prognosis seems rather good for control of seizures in light of findings and record and also in the fact that *he does not totally lose consciousness.*" (Emphasis supplied.) If the Doctor's prognosis is no better than his facts upon which he based it, then it is worthless because all of the facts in this record from every source indicate that this man's epileptic seizures are of the violent type which render him unconscious for periods sometimes as long as an hour. Presumably, the Doctor's prognosis would have been otherwise if he had had the facts. Indeed, if the Doctor had had the facts he might have concluded that the Claimant *was totally and permanently disabled* even though such a finding is not necessary. Upon further examination of this Doctor's report we find that in pointing out what he thinks might be an "employment possibility" he suggests that the Claimant *might* be employed "both in teaching or in some specialized area, particularly if he is tested out and found to be able to master theory." It is to be recalled that this

man who this Doctor was evaluating never went further than the sixth grade and didn't finish the sixth grade until age 15 and has never had any formal education beyond that point. What would he teach? What school system would employ him? What theory would he master? This evidence cannot be considered substantial because there is nothing to support it.

If reliance is to be had upon the reports from the Veterans Administration Hospital there is little more to support the Examiner's conclusion in that area because the last report from the Veterans Administration Hospital says that, "This patient's employability *is questionable* because control of his convulsive disorder outside the hospital is the major problem." (Emphasis supplied.) We do not overlook the fact that the report then continues with this final comment, "However, it is felt that with adequate control he could resume his occupation as a radio and electronic repairman", but we observe that the Claimant is following the regimen outlined for him by the hospital, he is taking the prescribed drug three times a day, he is reporting to them as required, and he still has the seizures and there is no reason to believe that they will not continue.

▇ This Court concludes that the finding of the Secretary is not supported by substantial evidence and should be set aside. The Plaintiff has carried the burden of proving his disability and period of disability as defined in the Act. In reaching this conclusion we feel that our decision is consistent with that in Blevins v. Fleming, Secretary, etc., 180 F. Supp. 287 (D.C.W.D.Ark.1960), in which case the Court was concerned with an epilepsy situation supporting a determination of disability wherein the person subject to the seizures did not have them as frequently nor were they as violent and prolonged as the seizures to which the claimant in this case is subject, and Bramlett v. Ribicoff, 298 F.2d 858 (4 Cir. 1962) wherein the Claimant had a history of frequent headaches and spells of dizziness for a long period of time and then finally had an epileptic seizure. In the Bramlett case there apparently was only one such seizure which had occurred at the time the Claimant made application for Social Security benefits, yet the Court concluded that the combination of frequent severe headaches and the fact that the Claimant was now subject to epileptic seizures, even though he had apparently had only one, entitled him to a determination of disability within the meaning of the Act. In Cook v. Celebrezze, 217 F.Supp. 366 (D.C.W.D.Mo. 1963) the Court had for consideration a case in which the Claimant was suffering from the less serious type of epilepsy, known as the petit mal type of seizure, and there the Court concluded that the determination by the Examiner that the Claimant was not disabled was not justified. The facts in this case which we have before us indicate a far greater degree of disability than was evident in the Cook case, supra. We also note the case of Wells v. Celebrezze, 209 F.Supp. 444 (D.C.W.D.N.C.1962) where the Claimant had a history of epileptic seizures and the evidence also showed that the seizures were controllable to some extent by medication, just as appears to be the situation in the case we now have before us. The Claimant in the Wells case also suffered from other bodily ailments just as the Claimant does in the instant case, and in the Wells case the Court emphasized that all the ailments should be considered together just as we have observed should be done in this case.

The case which we now decide is to be distinguished from the facts in such cases as Campbell v. Flemming, Secretary, 189 F.Supp. 339 (D.C.Kan.1960), where it appeared that the Claimant only had occasional fainting spells which did not render him unconscious, resulting in periods of two or three minutes where he would be unaware of his surroundings, never losing consciousness, wherein the Court concluded that there was not a sufficient showing to warrant a finding of disability within the meaning of the Act.

Pursuant to the foregoing opinion expressed, an order is being entered on this

date in accordance with this opinion reversing and remanding this case to the Secretary of Health, Education and Welfare with direction that the Plaintiff be placed under the coverage granted by the Act.