**LAWRENCE CHRYSLER PLYMOUTH, INC., a corporation, Plaintiff-Appellant,**

v.

**CHRYSLER CORPORATION, a Delaware corporation, et al., Defendants-Appellees.**

No. 71-1459.

United States Court of Appeals, Seventh Circuit.

Argued April 21, 1972.

Decided May 23, 1972.

609

Harold W. Huff, Douglas R. Carlson, Chicago, Ill., for appellant.

Douglas C. Moir, Edward J. Wendrow, Chicago, Ill., for appellees.

Before SWYGERT, Chief Judge, CASTLE, Senior Circuit Judge, and KILEY, Circuit Judge.

CASTLE, Senior Circuit Judge.

By this appeal Lawrence Chrysler Plymouth, Inc., plaintiff-appellant seeks a new trial on Count I of the amended complaint in its district court action against the defendants-appellees, Chrysler Corporation, Chrysler Motors Corporation and Chrysler Realty Corporation. Count I sought the recovery of damages predicated upon liability of the defendants under the Automobile Dealers' Franchise Act (15 U.S.C.A. §§ 1221–1225). At the close of the plaintiff's case the court directed a verdict for defendants on Count I.[1] Plaintiff's claim that this constituted error was preserved in plaintiff's motion for a new trial, which was denied, and is the basis for this appeal.

The test of the legal correctness of the direction of a verdict for the defendant at the close of the plaintiff's evidence is whether the court is justified in concluding that as measured by the applicable and controlling principles of law the plaintiff's evidence together with all reasonable inferences to be drawn therefrom, when viewed in the light most favorable to the plaintiff, is such that reasonable men in a fair and impartial exercise of judgment could reach no conclusion other than that liability of the defendant had not been established. In other words, the primary issue in this appeal is whether under the statute which plaintiff invoked in Count I of its complaint the plaintiff's evidence was such that the jury could have reasonably concluded that the defendants, or any of them, were liable. If such was not the case, the District Court did not err in withdrawing Count I from consideration by the jury, and entering judgment for the defendants thereon. Pinkowski v. Sherman Hotel, 7 Cir., 313 F.2d 190; Woods v. Geifman Food Stores, 7 Cir., 311 F.2d 711; Lambie v. Tibbits, 7 Cir., 267 F.2d 902.

[1]. The case went to the jury on Count II which was based on liability of the defendants for alleged fraudulent inducement of the plaintiff to enter into the direct dealer franchise agreement and the lease here involved. The jury returned a verdict for defendants, and no appeal was taken from the judgment for defendants entered on Count II.

The statute under which plaintiff predicates liability in the defendants (15 U.S.C.A. §§ 1221–1225) gives an automobile dealer the right to recover damages sustained by reason of the failure of the automobile manufacturer to act in good faith in performing or complying with any of the terms or provisions of the franchise, or in terminating, cancelling, or not renewing the dealer's franchise.[2] The Act (§ 1221) defines "franchise" so as to confine it to the "written agreement" between the manufacturer and the dealer; defines "automobile manufacturer" so as to include anyone acting for and under the control of the manufacturer "in connection with the distribution" of the automobiles; and defines "good faith" as follows:

"(e) The term 'good faith' shall mean the duty of each party to any franchise, and all officers, employees, or agents thereof to act in a fair and equitable manner toward each other so as to guarantee the one party freedom from coercion, intimidation, or threats of coercion or intimidation from the other party: *Provided*, That recommendation, endorsement, exposition, persuasion, urging or argument shall not be deemed to constitute a lack of good faith."

■■ The statute does not provide a new remedy for breach of contract but creates a new cause of action, an indispensable element of which is not the lack of good faith in the ordinary sense but a lack of good faith in which coercion, intimidation, or threats thereof, are at least implicit. The statutory definition of "good faith" has been construed by the courts according to its literal language, and the existence or nonexistence of "good faith" must be determined in a context of actual or threatened coercion or intimidation. Hanley v. Chrysler Motors Corp., 10 Cir., 433 F.2d 708; Kotula

v. Ford Motor Co., 8 Cir., 338 F.2d 732; Globe Motors, Inc. v. Studebaker-Packard Corp., 3 Cir., 328 F.2d 645, 647; Milos v. Ford Motor Co., 3 Cir., 317 F. 2d 712, 715–716; Woodward v. General Motors Corporation, 5 Cir., 298 F.2d 121, 127. And, in view of the express limitation contained in the statute oral representations or promises, not a part of the written franchise agreement or contract may not form. the basis of a claim of bad faith, coercion or intimidation, under the Act. Southern Rambler Sales, Inc. v. American Motors Corp., 5 Cir., 375 F.2d 932, 934; Frank Chevrolet v. General Motors Corporation (N. D.Ohio E.D.) 304 F.Supp. 307, aff'd 419 F.2d 1054; Alfieri v. Willys Motors, Inc. (E.D.Pa.), 227 F.Supp. 627, 629.

The sufficiency of the plaintiff's evidence to warrant a submission of Count I to the jury is to be tested in the light of the applicable and controlling principles of law, including the above mentioned elements which the statute here invoked fixes as prerequisites to liability thereunder. That evidence may be summarized as follows.

The plaintiff corporation was organized when its president and controlling shareholder, Al Feinerman, had in September 1968 secured a dealer franchise for it from defendant Chrysler Motors Corporation for the sale of Imperial, Chrysler and Plymouth automobiles (all products of defendant Chrysler Corporation and distributed through defendant Chrysler Motors Corporation) in an area of Illinois which included the City of Chicago, suburban localities in Cook County, and parts of DuPage and Will counties. This direct dealer franchise agreement [3] provided that plaintiff's sales and service business thereunder was to be operated at a West Lawrence Avenue, Chicago, location recited in the agreement as the plaintiff's address "or

---

2. There was no actual or threatened termination, cancellation, or failure to renew the franchise in the instant case. Only alleged lack of good faith by defendants in "performing or complying" with plaintiff's franchise is involved.

3. There were actually three agreements executed, one covering each of three makes of automobiles. Except for the make of automobile designated therein, all three of the agreements are materially identical.

at such other or additional locations as [Chrysler Motors Corporation] approves in writing". This West Lawrence Avenue location consisted of two buildings. One (2750 West Lawrence) was on the north side of the street. It contained an automobile showroom, storage space, and office space. The other (2743–51 West Lawrence) was on the south side of the street. It contained an office, a waiting room, a parts storage room, and open space for mechanics to work on automobiles. The defendant Chrysler Realty Corporation held a two-year lease on the buildings and premises, 19 months of which remained. Chrysler Realty sublet the property to plaintiff for the balance of the term expiring May 31, 1970. The franchise agreement contained a provision that it "is the entire agreement between the parties"; cancels and supersedes all earlier agreements, "written or oral"; and that no waiver, modification or change of any of the terms of the agreement will be valid or binding on Chrysler Motors Corporation unless approved in writing by the president or a vice-president of the corporation.

Feinerman was experienced in automobile sales. He had engaged in the business for 21 years in the Chicago area as a salesman, manager, and owner. Because of his dissatisfaction with an associate with whom he had been operating an American Motors dealership under the name of Bond Rambler, he had sold his interest therein and used the proceeds toward satisfying the capitalization requirements involved in plaintiff's acquisition of the franchise from Chrysler Motors Corporation. Prior to severing his relationship with Bond Rambler, Feinerman had made inquiries concerning a Chrysler Motors dealership but was advised that one who was still a Rambler dealer would not be accepted as a Chrysler franchisee. When in September 1968, after selling his interest in Bond Rambler, he again made inquiry

and a meeting with Chrysler Motors representatives followed, Feinerman was advised that the Lawrence Avenue dealership was the only one then available. It was then operating as a "Dealer Enterprise" dealership, headed by Ted Theodore, who, when Feinerman called to examine the site, told him that the dealership was not making any money. But Feinerman went ahead with the acquisition.

Plaintiff operated under its dealership franchise at the Lawrence Avenue location until May 31, 1970, on which date it closed the facilities coincidentally with the expiration of the sublease. The franchise agreement contains no expiration date but provides that the plaintiff may terminate the agreement on not less than 30 days written notice. Insofar as the record and the statements made on brief and in argument indicate, the plaintiff has not elected to so terminate the agreement. The record does reflect that the physical facilities at the Lawrence Avenue location proved it to be an unsatisfactory place at which to conduct the franchised business, and that plaintiff attributes its lack of success at the location and its cessation of the operation to the defects of the leased premises. Both buildings and their heating plants were old; the plumbing was inadequate to supply water at the pressure required for simultaneous operation of the one small air conditioning unit which functioned [4] and the restroom and car-washing facilities; although a new roof had been put on the south building just prior to plaintiff's moving in, and a new roof was put on the north building two or three months later, both continued to leak, causing frequent interruption of the electrical current and a collapse of a part of the ceiling in the south building in July 1969 which required removal of the service and parts department to the north building; and defects in the heating plant in the north

---

4. When Feinerman examined the premises during the negotiations preceding the execution of the franchise agreement and the sublease he was advised that the central air conditioning unit was inoperative, and he agreed that he could get along without it.

building caused it to be without heat at times and necessitated a number of service calls.

Under the terms of the primary lease and of the sublease to plaintiff the maintenance and replacement of the roofs were the responsibility of the landlord in the prime lease, not the defendant sublessor, Chrysler Realty. And, under the provisions of the sublease to plaintiff, insofar as the other problem areas are concerned, the responsibility of repair, maintenance and replacement was plaintiff's.

During the course of the September 1968 negotiations concerning the dealership franchise and the sublease both a local representative of Chrysler Motors and a local representative of Chrysler Realty told Feinerman that the dealership would be relocated on or before the lease was up. During 1969 Feinerman complained about the Lawrence Avenue location and asked that plaintiff's relocation be hurried up. He was advised as to the availability of dealerships in Oak Park, Berwyn and Peoria, Illinois, and at Milwaukee, Wisconsin, which he turned down. In September 1969 Feinerman told the Chrysler-Plymouth Division zone manager for Chrysler Motors Corporation that a Dodge agency would be acceptable to plaintiff, and he was informed that a Dodge dealership was available at Evanston, Illinois (a Cook County-Chicago area location). Feinerman was aware that the Chrysler-Plymouth Division personnel with whom he had dealt "had nothing to do with" the Dodge Division of Chrysler Motors Corporation, and after looking over the premises of the Evanston Dodge dealership he discussed its acquisition with the Dodge Division zone manager and learned that a capitalization of $140,000 would be required.

Feinerman then met with the Chrysler-Plymouth Division Chicago zone manager, and the Division's midwest manager, and discussed the possibility of plaintiff obtaining a release from the Lawrence Avenue sublease; the repurchase by Chrysler Motors of plaintiff's automobile parts inventory;[5] and the payment of money plaintiff claimed to be due it from Chrysler Motors for work done on automobiles under the latter's warranty,[6] and in payment of the 2½% rebate on new automobiles sold. Plaintiff's financial position was such that to meet the Dodge dealership capitalization requirement it would need to obtain such release, repurchase of its parts inventory, and money due on warranty work and the dealer's rebate. Feinerman was advised by the managers that it would be necessary to check to see "if it could be done that way" and that Feinerman would have an answer in a few days. That answer was favorable but the Dodge Division had sold the Evanston dealership to someone else the day before. Plaintiff's evidence reveals neither the date of the discussion nor the date the answer was received. But there is nothing which indicates that the answer to Feinerman's requests was not prompt. Moreover, except for an understanding with the Dodge Division zone manager with respect to the capitalization requirement for the Dodge dealership, it does not appear that either the plaintiff or the Dodge Division had made any commitment with respect to plaintiff's acquisition of the Evanston franchise.

The plaintiff contends, in substance, that the jury would have been warranted in concluding that the failure of the defendants to relocate plaintiff from the Lawrence Avenue site on or before the expiration of the sublease on those

5. Under the franchise agreement the plaintiff was required to maintain an inventory of parts which Chrysler Motors had the obligation to repurchase within 90 days after a termination of the franchise.

6. Because of the conditions at the Lawrence Avenue location plaintiff commenced in July 1969 to withhold payment of the $3,895 monthly rental due under the sublease. The sublease provided that failure to pay the rent effected an assignment of credits due or becoming due to plaintiff from Chrysler Motors Corporation, and the latter had been deducting the rent from warranty payments due plaintiff.

premises was coercive and intimidating conduct on the part of defendants which established the existence of the failure of good faith performance of the franchise agreement by the defendants which is actionable under the Automobile Dealers' Franchise Act. It additionally contends that the jury would have been warranted in concluding that the defendants withheld funds due the plaintiff under the franchise agreement with the purpose of depriving plaintiff of the opportunity of securing the Evanston Dodge dealership, and that such conduct amounted to economic coercion and intimidation—a bad faith non-compliance with the franchise agreement actionable under the statute.

■ At this point we digress briefly to point out that Chrysler Corporation was not a party to either the franchise agreement or the sublease here involved. The holding in York Chrysler-Plymouth, Inc. v. Chrysler Credit Corporation, 5 Cir., 447 F.2d 786, is equally apposite here, and the directed verdict for the defendant, Chrysler Corporation, was most proper. In *York*, where Chrysler Corporation was not a party to the franchise agreement, which was signed by Chrysler Motors Corporation, the Court said (447 F.2d 786 at p. 791):

> Clearly both Chrysler Corporation and Chrysler Motors are automobile manufacturers as defined in the Act. Chrysler Motors is such because it is a "corporation which acts for and is under the control of such manufacturer or assembler [Chrysler Corporation] in connection with the distribution of said automotive vehicles." 15 U.S.C. § 1221(a). Either could be sued for failure "to act in good faith in performing or complying with any of the terms or provisions of the franchise." 15 U.S.C. § 1222. However, there being no showing that would make either responsible for the acts of the other on an agency theory, and the facts indicating that they are separate legal entities each operating in its own sphere, only the one which has entered into a franchise agreement

could be held accountable for performing or complying with it. Since Chrysler Corporation was not a party to the franchise and had no legal responsibility to plaintiffs for the acts of Chrysler Motors, which signed the franchise, it should have been dismissed from the suit and the judgment should not have been entered against it. R.A.C. Motors, Inc. v. World-Wide Volkswagen Corp., 314 F. Supp. 681 (D.N.J.1970); Reliable Volkswagen Sales & Service Co. v. World-Wide Auto Corp., 216 F.Supp. 141 (D.N.J.1963); *Cf.*, Southern Rambler Sales, Inc. v. American Motors Corp., 375 F.2d 932 (5th Cir. 1967), cert. den. 389 U.S. 832, 88 S.Ct. 105, 19 L.Ed.2d 92.

■ Chrysler Realty Corporation contends that by a parity of reasoning it cannot be held liable to the plaintiff under the Automobile Dealers' Franchise Act, since it was not a signatory to the agreement between Chrysler Motors Corporation and the plaintiff. For the purposes of this case we need not determine the validity of that contention, *i. e.*, whether the sublease from Chrysler Realty to plaintiff is to be considered a part of the "franchise agreement", and Chrysler Realty thus within the ambit of the statute. Assuming, *arguendo*, such to be the case, plaintiff's first contention is nevertheless without merit. Neither the sublease nor the agreement between Chrysler Motors and the plaintiff contains any provision which requires either of said defendants to relocate the plaintiff. And, under the statutory definition of "franchise" the oral representations or promises with respect to a relocation of the plaintiff on or before the expiration of the sublease cannot supply the basis for a charge of failure of good faith performance actionable under the Act. (*Southern Rambler Sales; Alfieri; Frank Chevrolet, supra*).

■ Nor are we persuaded by plaintiff's additional contention that the jury could have found that the defendants withheld funds from the plaintiff in or-

der to deprive it of the opportunity of acquiring the Evanston Dodge franchise. A careful examination of the testimony relating to the defendants' handling of the inquiries Feinerman made in connection with the plaintiff's proposed acquisition of the Dodge dealership convinces us that the record is barren of anything which would warrant a conclusion that the defendants failed to act in good faith. It appears that the matter crystallized within a few days after it was broached. The testimony does not reflect that the defendants acted other than promptly in furnishing Feinerman with the information he sought and needed. And the defendants' response was favorable to plaintiff. That the dealership was disposed of in the interim is not a basis for attributing bad faith to the defendants.

We conclude that the District Court did not err in directing a verdict for the defendants on Count I of plaintiff's complaint and entering judgment for the defendants thereon. The judgment order of the District Court is affirmed.

Affirmed.