**ED HOUSER ENTERPRISES, INC.,**
**Plaintiff-Appellant,**

v.

**GENERAL MOTORS CORPORATION,**
**Defendant-Appellee.**

No. 78–1012.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 15, 1978.

Decided Dec. 21, 1978.*

March 28, 1979.

---

* This appeal was originally decided by unreported order on December 21, 1978. *See* Circuit Rule 35. The Court has subsequently decided to issue the decision as an opinion.

Richard N. Molchan, Peoria, Ill., for plaintiff-appellant.

Leslie D. Locke, Chicago, Ill., for defendant-appellee.

Before SPRECHER, BAUER, and WOOD, Circuit Judges.

PER CURIAM.

The plaintiff-appellant, Ed Houser Enterprises, Inc., appeals from the district court orders granting summary judgment in fa-

vor of the defendant-appellee, General Motors Corporation, as to Count I of its complaint, and further denying the plaintiff's motions for reconsideration. Plaintiff also appeals from the judgment entered on the jury verdict in favor of the defendant as to Count II of its complaint. The appellant presents numerous issues for review in its appeal, which may be summarized as follows:

(1) whether a genuine issue of material fact was raised in Count I of the complaint on the question of whether the defendant violated the "Automobile Dealers' Day in Court Act", 15 U.S.C. § 1221 *et seq.;*

(2) whether the jury verdict on Count II in favor of the defendant was against the manifest weight of the evidence; and

(3) whether the court committed reversible error during the trial of Count II of the complaint by certain of its instructions to the jury, and by allowing certain of the defendant's witnesses to testify, and by admitting into evidence certain of the defendant's exhibits.

We are not persuaded by the arguments advanced in support of these contentions, and accordingly, we affirm the judgments appealed from for the reasons set forth below.

### I.

Plaintiff, Ed Houser Enterprises, Inc., was a franchised dealer of Chevrolet automobiles and trucks in Peoria, Illinois, from June, 1970 to May, 1973. In February, 1975, the plaintiff filed its complaint in two counts against the defendant, General Motors Corporation (hereinafter "GM"), seeking damages for the defendant's alleged failures to perform certain terms and provisions of the written automobile dealer franchise agreement in force between the parties during the period of the plaintiff's franchise. Count I of the complaint alleged that the defendant violated the "Automobile Dealers' Day in Court Act", 15 U.S.C. §§ 1221–1225 (hereinafter "Dealer Act"),

due to the failure of the defendant to act in good faith in performing or complying with the terms and provisions of the franchise dealer contracts. Count II of the complaint alleged that the defendant committed a breach of contract by failing to perform or to comply with the terms and provisions of the franchise contracts.

In December, 1975, the defendant moved for a partial summary judgment as to Count I of the complaint. Following a hearing on the defendant's motion, the district court granted summary judgment for the defendant on Count I, holding that the plaintiff had failed, as required under Rule 56(e) of the Federal Rules of Civil Procedure, to set forth specific facts raising a genuine issue that it had been coerced, threatened, or intimidated by the defendant. Further, the court held there were no facts showing any coercion in respect of the defendant's alleged practice of discriminatory distribution. The court also held that the uncontroverted facts plainly refuted the allegation that the plaintiff was threatened or coerced to build new facilities or to sell its dealership. The plaintiff's motions for reconsideration on the judgment rendered on Count I of its complaint were subsequently denied by the court.

In September, 1977, the plaintiff's breach of contract claims under Count II of its complaint were litigated at a jury trial. Following a three week trial, the jury returned a verdict in favor of the defendant as to Count II. The plaintiff's motion for a new trial was denied.

### II.

■ The appellant first challenges the district court's order granting summary judgment in favor of the defendant as to Count I of its complaint. It is settled that the standard of appellate review of a summary judgment order is the same as that applied by the trial court under Rule 56: whether the plaintiff presented a genuine issue of fact. *See, e. g., United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). The appellant contends that it met its burden in this regard,

alleging there is sufficient evidence in the record creating a genuine issue of material fact that GM's conduct violated the Dealer Act. We disagree.

■ The Dealer Act provides automobiles dealers with a cause of action for treble damages caused by a manufacturer's failure to act in "good faith" in performing or complying with the terms of a written franchise agreement, or in terminating, canceling, or not renewing the franchise. The Act defines "good faith" as follows:

"The term 'good faith' shall mean the duty of each party to any franchise, and all officers, employees, or agents thereof to act in a fair and equitable manner toward each other so as to guarantee the one party freedom from coercion, intimidation, or threats of coercion or intimidation from the other party: *Provided,* That recommendation, endorsement, exposition, persuasion, urging or argument shall not be deemed to constitute a lack of good faith." 15 U.S.C. § 1221(e).

Thus, an indispensable element of a cause of action under the Dealer Act is a lack of good faith in which coercion, intimidation, and threats thereof exist. This court has so held. *Lawrence Chrysler Plymouth, Inc. v. Chrysler Corp.,* 461 F.2d 608 (7th Cir. 1972), cert. denied, 409 U.S. 981, 93 S.Ct. 317, 34 L.Ed.2d 245 (1972). Therefore, in order to succeed under this section of the Act, the plaintiff must allege facts showing coercion.

■ To meet its burden, the appellant asserts three types of action or threatened coercive conduct by GM in violation of the Act. First, the appellant argues that GM threatened non-renewal of the franchise agreement to coerce the appellant to construct new facilities. Second, the appellant contends, although not before the district court, that GM curtailed the appellant's allocation of vehicles as a sanction for failure to construct new facilities. Third, the appellant argues that the combination of GM's alleged bad faith acts in performing the franchise agreement constituted a coercive course of conduct.

The appellant's contention that GM threatened non-renewal of the franchise to coerce the appellant to construct new facilities is not substantiated on the record. The appellant was advised prior to entering into the franchise agreement that the defendant would not renew the agreement unless new dealership facilities were built. Among the reasons for the appellant's request for a longer term contract than ordinary (i. e., five years), was its recognition, in a letter to the defendant's zone manager, that such time would enable it to liquidate certain indebtedness incurred in connection with acquiring the company from the previous owner, "before embarking on a program of facility expansion or improvement of the present facilities to our mutual benefit", (Supp.App., 230–231). It is also apparent from the record that Mr. Houser, as an officer of the former franchisee, was quite aware of the long-standing concern expressed by the defendant's management during the former franchisee's ownership over the conditions of the dealership's physical facilities which the plaintiff planned to occupy. Thus, pursuant to the recommendation of the Peoria zone manager, GM, in a letter to the plaintiff dated May 14, 1970, granted the request for a new five-year term Selling Agreement with the express understanding that a renewal of the agreement would not be given unless positive and definite action had been taken toward the construction of new and adequate under-roof facilities. A new Selling Agreement, in consideration of this express condition, was executed by the parties on June 5, 1970.

On appeal, the appellant challenges the validity of this condition, claiming that a subsequent Dealer Selling Agreement, executed on November 1, 1970, superseded the June 5, 1970 agreement. The appellant concedes that renewal of the June agreement was conditioned upon modernization of its dealership facilities, but argues that the November agreement was not conditioned upon such a requirement. In support of its position, the appellant acknowledges that the basis of the June agreement was GM's letter of May 14, 1970, in which

the requirement of modernization was established as a condition for renewal. But it contends that the basis for the November agreement was expressed in a June 30, 1970 letter from GM to its dealers, which only required the appellant to meet the space guides established by GM, and therefore, renewal of the November agreement was not conditioned upon the requirement of modernization.

However, this contention ignores the fact that the June agreement expressly contemplated that it was a temporary measure, to be substituted by a new form of agreement being prepared at the Chevrolet Motor Division for execution on November 1, 1970. Further, the June 30, 1970 letter plaintiff received from GM was a version of a form letter sent to all Chevrolet dealers in the Peoria zone, advising them that the new form of agreement would be presented and explained in a series of meetings prior to November 1, 1970. The version of the letter plaintiff received was addressed to dealers whose facilities did meet the established space guides required by the franchise agreement. Thus, the June letter was concerned with the size of plaintiff's facilities. It did not deal with the plaintiff's need for modernization or the defendant's terms for renewal. There is no other evidence in the record to support the claim that the defendant abandoned or otherwise waived the requirement of modernization as a condition for renewal of the franchise agreement. On the contrary, the evidence clearly refutes this claim. Both franchise agreements obligated the plaintiff to maintain dealership facilities that were satisfactory in appearance, and adequate in size and layout. The communications between the parties plainly indicated that the defendant continued to regard the plaintiff's facilities as deficient under these standards.

Thus, action toward construction of new and adequate facilities was an express condition for subsequent renewal of the franchise contract. Inclusion of this condition resulted at the suggestion of the plaintiff as the basis for an extended five year franchise term. The condition was subsequently endorsed by the zone management, and

the plaintiff evidenced his acceptance of this condition by executing a contract tendered in consideration of such a provision. It cannot be said, therefore, that the defendant threatened or coerced or intimidated the plaintiff to provide new facilities when the basis of the agreement required such a commitment on the part of the plaintiff. In *Woodard v. General Motors Corp.,* 298 F.2d 121 (5th Cir. 1962), the plaintiff brought an action under the Act claiming that the manufacturer failed to act in good faith when it terminated the franchise agreement due to the dealer's failure to maintain satisfactory facilities pursuant to its contractual obligation. The court affirmed the entry of summary judgment for the defendant manufacturer, holding that an automobile manufacturer is not precluded by the Act from requiring its dealers, pursuant to the contract between them, to provide facilities commensurate with the good will attached to the trade name of the manufacturer, and adequate to compete with dealers in products of the manufacturer's competitors.

Similarly, non-renewal of a franchise for failure of the dealer to meet the bargained for renewal condition has been held to be non-coercive conduct. *See, e. g., Fabert Motors, Inc. v. Ford Motor Co.,* 355 F.2d 888 (7th Cir. 1966), *cert. denied,* 384 U.S. 939, 86 S.Ct. 1462, 16 L.Ed.2d 539 (1966); *David R. McGeorge Car Co., Inc. v. Leyland Motors Sales, Inc.,* 504 F.2d 52 (4th Cir. 1974), *cert. denied,* 420 U.S. 992, 95 S.Ct. 1430, 43 L.Ed.2d 674 (1975).

In the case at bar, the only allegations of coercive conduct by the defendant subsequent to the execution of the agreement consisted of verbal demands by the Peoria zone manager concerning the plaintiff's plans to correct its facility deficiencies. Assuming these requests were made with the authority of the defendant, they cannot be construed other than as a legitimate inquiry into the progress the plaintiff had made toward meeting its obligation under the franchise agreement. Absent additional facts showing the defendant otherwise coerced the plaintiff, the plaintiff has not

demonstrated sufficient facts to accrue a cause of action under the Act.

■ Further, there was no showing by the plaintiff that this alleged coercion resulted in termination of the dealership. In his deposition testimony, Edward M. Houser cited two reasons as the basis for his decision to sell his Chevrolet dealership. He stated that the distribution policies of GM made it undesirable to do business, and that his sons lacked interest in entering the automobile business.

In order to establish a lack of good faith supportive of a claim under the Act for termination or non-renewal of a franchise, a necessary element is causation of such termination or non-renewal. *See, e. g., Autohaus Brugger, Inc. v. Saab Motors, Inc.,* 567 F.2d 901, 911 (9th Cir. 1978). The reasons cited by the plaintiff for selling the dealership did not include the defendant's alleged pressure to modernize the dealership facilities. Therefore, there was no causal connection established between the plaintiff's termination of the franchise and the defendant's alleged threat of non-renewal for failure to modernize the dealership facilities, even assuming that such modernization was not a condition of the franchise agreement.

■ The plaintiff also alleged that the defendant violated the Act with respect to its discriminatory allocation of vehicles to the plaintiff. The district court rejected this claim, holding that discriminatory allocation, without the concomitant of coercion, does not constitute conduct proscribed by the Act. Thus, absent facts showing coercion, discriminatory allocation is not *per se* cognizable under the Act. *See Southern Rambler Sales, Inc. v. American Motors Corp.,* 375 F.2d 932, 935 (5th Cir. 1967), *cert. denied,* 389 U.S. 832, 88 S.Ct. 105, 19 L.Ed.2d 92 (1967).

We agree with the district court that the plaintiff has not alleged sufficient facts to show that the claimed discriminatory allocation by the defendant was a coercive tactic within the purview of the Act. In opposition to the defendant's motion for summary judgment, the plaintiff submitted the opposing affidavit of Edward M. Houser in support of the allegation of bad faith distribution. The affidavit stated that Houser was denied access to vehicle allocation records on file at the Peoria zone office, which it is claimed he was entitled to examine. Houser further stated that he was not offered vehicles for special promotions, when a competitor was, and presented comparisons he prepared of Peoria zone allocations of vehicles. Accepting these statements, no genuine issues as to any material fact actionable under the statute are presented. The Act does not create a cause of action based on an alleged discriminatory practice without the requisite causal connection of coercion on the part of the defendant.

■ To remedy this defect in the plaintiff's pleadings, it alleges on appeal that the defendant curtailed allocations of vehicles to the plaintiff as a sanction for the plaintiff's refusal to modernize its facilities. As this argument was not raised in the lower court, we view it as improperly raised on appeal. *Hamilton Die Cast, Inc. v. United States F. & G. Co.,* 508 F.2d 417, 420 (7th Cir. 1975). Accordingly, it is not subject to appellate review.

For the reasons discussed above, we affirm the district court's order granting summary judgment in favor of the defendant as to Count I of the complaint, and further, affirm the district court's denial of the plaintiff's motions for reconsideration of the order for summary judgment.

### III.

■ The plaintiff also challenges the jury verdict in favor of GM on Count II of the complaint as against the manifest weight of the evidence. It is a fundamental principle of appellate review that a plaintiff is precluded from asserting on appeal that the evidence was insufficient to support a jury verdict in favor of defendant where the plaintiff has failed to challenge the legal sufficiency of the evidence in any manner available to it. *Berman v. Palatine Insurance Co.,* 379 F.2d 371 (7th Cir. 1967). In *Berman,* this Court held that a plaintiff was

not entitled to challenge on appeal the sufficiency of the evidence to support a jury verdict, where he had not moved for a directed verdict, but rather insisted that the issues be submitted to a jury and, subsequent to an adverse verdict, the plaintiff had not moved for judgment notwithstanding the verdict but merely a new trial on the ground that the verdict was contrary to the *manifest weight of the evidence*. In this case, the plaintiff failed to move for a directed verdict or judgment notwithstanding the verdict, but merely moved for a new trial. Therefore, it is manifest that the plaintiff's challenge as to the weight of the evidence is improperly raised on appeal.

## IV.

■ The plaintiff also contends that the district court committed reversible error during the trial of Count II of the complaint by certain of its instructions to the jury, by allowing certain of the defendant's witnesses to testify, and by admitting into evidence certain of the defendant's exhibits. We have examined the arguments advanced in support of these contentions, and find them meritless.

Based on the record in this case, the district court did not abuse its discretion in admitting two of the defendant's exhibits into evidence and by allowing three of the defendant's witnesses to testify, where neither the witnesses nor the exhibits were noted on the pre-trial memorandum. The district court properly denied the plaintiff's objection on the grounds it had stated at the outset of the trial: that it would be lenient in such matters due to the rather numerous amendments by both parties to the memorandum, and that sufficient opportunity was available to the plaintiff for discovery as to these matters. Further, the plaintiff's failure to request additional time to obtain the discovery or to prepare the rebuttal does not support a subsequent claim for relief.

With respect to the plaintiff's claim that the district court erred in two of its instructions to the jury, we find the challenged instructions were proper.

For the foregoing reasons, the judgments appealed from are

AFFIRMED.