**CONROY DATSUN LTD., Mi Inc., Lawrence P. Conroy and Joan Conroy, Plaintiffs,**

v.

**NISSAN MOTOR CORPORATION IN U. S. A., Defendant.**

No. 79 C 2870.

United States District Court, N. D. Illinois, E. D.

Dec. 18, 1980.

John Bernard Cashion, Chicago, Ill., for plaintiffs.

Barbara Altman, John P. Lynch, Hedlund, Hunter & Lynch, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiffs bring this action against defendant Nissan Motor Corporation in U.S.A. ("Nissan") pursuant to the Automobile Dealers' Day in Court Act ("the Act"), 15 U.S.C. §§ 1221 *et seq.*, alleging Nissan's failure to act in good faith in complying with the provisions of the plaintiffs' automobile dealership franchise. In Count I of the complaint, plaintiffs Conroy Datsun Ltd. ("CDL") and Lawrence P. Conroy ("Conroy") allege that Nissan prevented them from selling or transferring their interest in the dealership and that Nissan required them to make capital improvements in the dealership premises under circumstances that would impair the profitability of the dealership. In Count II, all plaintiffs request declaratory judgment pursuant to Fed.R.Civ.P. 57 and 28 U.S.C. §§ 2201, 2202, "declaring that all damages for which defendant is liable are payable irrespective of the manner in which the funds were acquired by CDL." This matter is now before this Court on three motions: (1) plaintiffs' motion for leave to file amendments to their complaint; (2) Nissan's motion to dismiss Count I insofar as it attempts to state a claim on behalf of Conroy, and to dismiss Count II for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted; and (3) Nissan's motion for summary judgment as to Count I.

## I. AMENDING THE COMPLAINT

Plaintiffs filed this action as a two-count complaint on July 10, 1979. The complaint included an allegation that Nissan had violated the Act by failing to provide a suffi-cient stock of popular automobile models to the franchise. At Conroy's deposition on November 30, 1979, plaintiffs' counsel stated that plaintiffs intended to drop this allegation. However, plaintiffs' counsel added that if additional information was uncovered during discovery, plaintiffs would broaden the scope of their complaint. Conroy concurred with the statements made by his attorney.[1] Shortly thereafter, plaintiffs filed an amended complaint, with the popular model allegation deleted.

Plaintiffs now seek to amend their complaint for a second time in order to reallege the "popular models" claim as part of Count I, and to add a third count under 15 U.S.C. §§ 1221 *et seq.*, for Nissan's alleged failure to pay for warranty work performed by CDL. Nissan opposes plaintiffs' motion for leave to amend on the grounds that Nissan would be unduly prejudiced because of plaintiffs' unreasonable delay, bad faith, and dilatory motive. With respect to the attempt to add Count III, Nissan argues that the Court is without subject matter jurisdiction to hear that claim.

■ Under Rule 15(a) of the Federal Rules of Civil Procedure, once a defendant has answered, plaintiff may amend the complaint "only by leave of the court or by written consent of the adverse party." Rule 15(a) directs that leave to amend be granted liberally. *Foman v. Davis,* 371 U.S. 178, 181, 83 S.Ct. 227, 229, 9 L.Ed.2d 222 (1962); *Stern v. United States Gypsum, Inc.,* 547 F.2d 1329, 1334 (7th Cir.), *cert. denied,* 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977). Such leave, however, is inappropriate where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc." *Foman,* 371 U.S. at 182, 83 S.Ct. at 230, *Mertens v. Hummel,* 587 F.2d 862, 865 (7th Cir. 1978).

---

1. Plaintiffs' counsel reiterated the gist of these remarks at the continuation of Conroy's depo-sition on December 27, 1979.

The determination as to whether leave to amend should be granted is committed to the discretion of the trial court. *Mertens, id.*

At the outset, it bears noting that virtually every amendment of a complaint results in some degree of prejudice to a defendant, in that new discovery generally will be required and the date of trial will be delayed. Thus, it is not enough that a defendant will suffer prejudice from the amendment; that prejudice must be undue. *Hess v. Gray*, 85 F.R.D. 15, 20 (N.D.Ill.1979). Undue prejudice has been found in cases where the amendment "brings entirely new and separate claims, adds new parties, or at least entails more than an alternative claim or a change in the allegations of the complaint;" and where the amendment would require expensive and time-consuming new discovery. *A. Cherney Disposal Co. v. Chicago & Suburban Refuse Disposal Corp.*, 68 F.R.D. 383, 385 (N.D.Ill.1975). In such instances, a motion for leave to amend should be denied because the prejudice to the defendant outweighs the right to have the case tried on the merits. *Hess v. Gray*, 85 F.R.D. at 20.

In weighing the equities in this case, the Court finds that Nissan has been unduly prejudiced by plaintiffs' inconsistent handling of the popular models claim. When plaintiffs deleted this claim in their amended complaint, defendant pursued discovery under the reasonable belief that the popular models claim was no longer at issue. Discovery continued apace and depositions of potential witnesses were held. Then, ten days before the close of discovery, plaintiffs brought the instant motion, which, if allowed, would require additional and duplicative discovery on an entirely new area of inquiry.

It is incumbent upon the movant to show that the information upon which the new claim is based was unknown or unavailable prior to the filing of the motion. Motions to amend pleadings so as to restore allegations that the movant previously abandoned create a difficult burden for the moving party since it is obvious that the movant did not suddenly discover a new cause of action. Accordingly, a number of courts have denied motions to amend pleadings for purposes of restoring allegations. *See, e. g., Waters v. Weyerhauser Mortgage Co.*, 582 F.2d 503, 507 (9th Cir. 1978); *Friedman v. Transamerica Corp.*, 5 F.R.D. 115, 116 (D.Del.1946).

Plaintiffs do not dispute that delay and prejudice will result if their motion for leave to amend is granted. Instead, they claim that the popular models claim is being asserted at this late date because they received information integral to the claim during the deposition of James Walsh.[2] Had James Walsh been a witness connected to Nissan and deposed by plaintiffs, this argument would merit serious consideration; however, James Walsh is the nephew of plaintiff Conroy, and the general manager of plaintiff CDL. At deposition, Walsh testified that he and Conroy shared involvement in CDL's business and that he and Conroy discussed the instant lawsuit before it was filed. It is, thus, clear that any information possessed by James Walsh was readily available to plaintiffs well before the filing of their motion for leave to amend. Plaintiffs have failed to offer any other reason for their delay in asserting their claim. Consequently, the Court finds that plaintiffs have shown no good cause to amend Count I of the complaint which would justify the resulting prejudice to Nissan.

Plaintiffs' motion for leave to amend to add Count III raises somewhat different questions. Nissan does not assert any undue prejudice by the addition of the proposed Count III because plaintiffs' counsel informed Nissan of their intention to pursue this claim at Conroy's deposition, long before this motion was filed. Instead, Nis-

---

**2.** In their responsive memorandum, plaintiffs state that, "The deposition of James Walsh of March 13, 1980, revealed the element of intimidation which shed new light on specific instances of inequitable allocation and which made the proposed amended complaint necessary...."

san asserts that Count III should be dismissed because the Court lacks subject matter jurisdiction over the claim. In Count III, plaintiffs seek to recover $5,410.70 in allegedly unpaid warranty claims. Plaintiffs allege that this failure to pay warranty claims constitute bad faith in violation of the Dealers' Day in Court Act, 15 U.S.C. §§ 1221 et seq.

 Nissan argues that this claim must be dismissed because it fails to allege coercion, intimidation, or threats of coercion or intimidation on the part of the manufacturer. Although it is true that an indispensable element of a cause of action under the Act is a lack of good faith in which coercion, intimidation, or threats thereof exist, *Ed Houser Enterprises v. General Motors Corp.*, 595 F.2d 366, 369 (7th Cir. 1978) (per curiam); *Lawrence Chrysler Plymouth, Inc. v. Chrysler Corp.*, 461 F.2d 608 (7th Cir. 1972), *cert. denied*, 409 U.S. 981, 93 S.Ct. 317, 34 L.Ed.2d 245 (1972), the appropriate time for determining whether such coercion existed is not on a motion for leave to amend the complaint. If it appears reasonably conceivable that at trial plaintiffs can establish a set of facts entitling them to relief, the complaint should not be dismissed. *Mathers Fund, Inc. v. Colwell Co.*, 564 F.2d 780, 783 (7th Cir. 1977). Accordingly, because plaintiffs could conceivably prove the requisite coercion at trial, plaintiffs' motion for leave to amend their complaint to add Count III is granted.

## II. NISSAN'S MOTION TO DISMISS CONROY

 Nissan has moved this Court to dismiss Conroy from Count I of the complaint on the grounds that only CDL has standing to bring this action under the Act. The Act, pursuant to which plaintiffs have brought this action, specifically limits plaintiffs to "automobile dealers," statutorily defined as:

any person, partnership, corporation, association, or other form of business enterprise resident in the United States or in any Territory thereof or in the District of Columbia operating under the terms of a franchise and engaged in the sale or distribution of passenger cars, trucks, or station wagons.

15 U.S.C. § 1221(c). Although four plaintiffs have brought this suit, only one of them, CDL, has operated "under the terms of a franchise and engaged in the sale or distribution" of motor vehicles. It was CDL, not Conroy, that submitted an application for a Datsun Sales and Service Agreement to Nissan's regional office. Similarly, when CDL supplemented its application to Nissan, the supplements were signed on behalf of the corporation alone. Likewise, Nissan's offer of a franchise was directed solely to CDL, and the Dealer Sales and Service Agreement entered into by Nissan in September, 1977, was made solely with CDL. Although Conroy is the president and majority shareholder of CDL, it is uncontroverted that CDL is a viable and separate corporation duly organized under the laws of the State of Illinois.[3]

The plain language of the Act and settled principles of corporate law clearly establish that the proper party to assert a cause of action under the Act is the dealership itself, not an officer or shareholder of a corporate dealership. Plaintiffs, in turn, argue that the Seventh Circuit and other courts have developed an exception to the above rule in situations similar to this one, and that consequently Conroy should be granted standing under the Act.

Plaintiffs rely primarily on those few cases holding that in exceptional situations an individual dealer can sue a manufacturer in his individual capacity. In *Kavanaugh v. Ford Motor Company*, 353 F.2d 710 (7th Cir. 1965), cited by plaintiffs, the Seventh Circuit permitted the sole individual shareholder of a terminated dealership to sue in his own name based upon a number of interdependent factors. First, the court noted that Daniel Kavanaugh applied for the Ford

**3.** On January 18, 1979, CDL filed a petition for reorganization under Chapter 11 of the then effective bankruptcy law. A plan of reorganization was approved and CDL was discharged on April 9, 1979.

dealership as an individual, not on behalf of a corporation; the import of this fact being that both parties considered the individual as the dealer. *Id.* at 716. Second, the court found that Kavanaugh was not regarded merely as an investor in a dealership, but rather that Kavanaugh "was deemed essential to the operation of the dealership." *Id.* Finally, and of prime importance, the court in *Kavanaugh* found that the contractual relationship between Ford and the dealership effectively allowed Ford to control the corporate dealership: Ford owned all the voting stock and controlled the board of directors. *Id.* at 712–714. As a result, the court concluded that the corporate format was adopted in order to defeat the legislative purpose of the Act and that, regardless of intent, the corporate structure effectively insulated Ford from liability under the Act. *Id.* at 717. Consequently, the court "pierced the veil" of the corporate entity and held that Kavanaugh, individually, was an automobile dealer under the terms of a franchise within the meaning of the Act. *Id.*

In the instant case, only one of the factors considered in *Kavanaugh* is even arguably present. Conroy asserts that, as in *Kavanaugh*, he personally was deemed essential to the operation of the dealership. In support thereof, Conroy emphasizes that the Sales & Service Agreement between Nissan and CDL was entered into in reliance upon the personal qualifications of the president (Conroy) and the vice-president of CDL. Although the Sales & Service Agreement was contingent upon "personal" representations and commitments made by Conroy, this fact, without more,[4] does not confer standing on the named owner of a dealership. *Sherman v. British Leyland Motors, Ltd.*, 601 F.2d 429, 439–440 (9th Cir. 1979); *Moorehead v. General Motors Corp.*, 442 F.Supp. 873, 879 (E.D.Pa.1977); *Contra, York Chrysler-Plymouth, Inc. v. Chrysler*

*Credit Corp.*, 447 F.2d 786 (5th Cir. 1971); *Rodrigue v. Chrysler Corp.*, 421 F.Supp. 903, 907–908 (E.D.La.1976). The holding by the Seventh Circuit in *Kavanaugh* was based primarily on the finding that the dealership was effectively prevented from asserting its own cause of action; therefore, the court held that in such an exceptional situation, the remedial purpose of the Act required a broader recognition of individual standing than would normally be appropriate. Absent factual considerations such as those presented in *Kavanaugh*, this Court finds no reason to depart from the established principle that the locus of the right of action is the corporation. *See Vincel v. White Motor Corp.*, 521 F.2d 1113 (2d Cir. 1975). Accordingly, CDL is the only party with standing to bring this action and Nissan's motion to dismiss Count I as to plaintiff Conroy must be granted.

### III. NISSAN'S MOTION TO DISMISS COUNT II

Count II of plaintiffs' complaint purports to be brought as a request for declaratory judgment pursuant to 28 U.S.C. §§ 2201, 2202 by CDL, Conroy, Joan Conroy (as a shareholder in CDL and MI Inc.), and MI Inc. (a corporation owned by the Conroys). Plaintiffs allege that Conroy and MI Inc., made certain loans to CDL; that Conroy personally paid certain debts of CDL and forfeited personal funds pledged as security for financing of CDL; and that Conroy and Joan Conroy personally guaranteed loans to CDL and currently are in debt to those guaranties. Plaintiffs request that this Court enter a declaration "that all damages for which defendant is liable are payable irrespective of the manner in which the funds were acquired by [CDL]."

Apparently, plaintiffs are asking this Court to unravel various financial transactions in which CDL is involved. This purported claim might also be viewed as an

---

4. Conroy, in a rather unusual admission, also asserts that, as president of CDL, he ignored corporate entities in dealings between CDL and himself by commingling his funds with those of CDL. This Court gives little weight to this assertion since Conroy made no similar admission when CDL filed for reorganization under the bankruptcy law. Conroy cannot invoke the protection of corporate status at bankruptcy proceedings and then admit to commingling of funds when it serves his pecuniary advantage.

attempt to draw Conroy, Joan Conroy, and MI Inc. into Count I as effective plaintiffs for CDL's claim against Nissan under the Dealer's Day in Court Act—a cause of action that this Court has held can be brought only by CDL. In either event, plaintiffs have failed to show that any of the allegations included in Count II state a cognizable claim against Nissan. Accordingly, Nissan's motion to dismiss Count II of plaintiffs' complaint must be granted.

## IV. NISSAN'S MOTION FOR SUMMARY JUDGMENT ON COUNT I

In the first count of their complaint, plaintiffs allege that Nissan engaged in two actions that allegedly violated the Act. First, they allege that Nissan required them to make capital improvements in the physical facilities of CDL, under circumstances that would impair the profitability of the dealership. Second, plaintiffs allege that Nissan prevented them from selling or transferring their interest in the dealership. These actions, viewed either separately or together, are alleged to constitute a lack of good faith by Nissan under the Act, thus meriting judgment in favor of plaintiffs. Defendant, however, has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, arguing that, with respect to both alleged actions, there is no genuine issue of material fact, and that as a matter of law, the record in this case shows the absence of any coercive or intimidating conduct on the part of Nissan.

The Automobile Dealers' Day in Court Act provides automobile dealers with a cause of action in federal court for damages sustained "by reason of the failure of [an] automobile manufacturer ... to act in good faith [1] in performing or complying with any of the terms or provisions of the franchise, or [2] in terminating, cancelling, or not renewing the franchise with said dealer." 15 U.S.C. § 1222. The Act defines "good faith" as "the duty of each party to any franchise, and all officers, employees, or agents thereof to act in a fair and equitable manner toward each other so as to guarantee the one party freedom from coercion, intimidation, or threats of coercion or intimidation from the other party...." Thus, an indispensable element under the Act is a lack of good faith in which coercion, intimidation, or threats thereof exist. *Ed Houser Enterprises v. General Motors Corp.*, 595 F.2d 366, 369 (7th Cir. 1978); *Lawrence Chrysler Plymouth, Inc. v. Chrysler Corp.*, 461 F.2d 608 (7th Cir. 1972), *cert. denied*, 409 U.S. 981, 93 S.Ct. 317, 34 L.Ed.2d 245 (1972).

The Seventh Circuit decision in *Houser* provides important guidance in considering Nissan's motion for summary judgment. In *Houser*, the dealer alleged that GM threatened non-renewal of the franchise agreement in an attempt to coerce it to construct new facilities. 595 F.2d at 369. The Court found, however, that the dealer was advised prior to entering into the franchise agreement that GM would not renew the agreement unless new facilities were built, and that the dealer evidenced his acceptance of this condition by executing a contract tendered in consideration of such a provision. *Id.* at 370. The court then concluded, as a matter of law that,

> *It cannot be said, therefore, that the defendant threatened or coerced or intimidated the plaintiff to provide new facilities when the basis of the agreement required such a commitment on the part of the plaintiff....*

In the case at bar, the only allegations of coercive conduct by the defendant subsequent to the execution of the agreement consisted of verbal demands ... concerning the plaintiff's plans to correct its facility deficiencies. Assuming these requests were made with the authority of the defendant, they cannot be construed other than as a legitimate inquiry into the progress the plaintiff had made toward meeting its obligation under the franchise agreement. Absent additional facts showing the defendant otherwise coerced the plaintiff, the plaintiff has not demonstrated sufficient facts to accrue a cause of action under the Act.

595 F.2d 370–371 (emphasis added). As a result of this finding, the Seventh Circuit upheld the trial court's order of summary judgment on that aspect of the case.

■ The instant case presents an analogous fact situation to that provided in *Houser.* It is uncontroverted that Nissan required the expansion of CDL's facilities—but this requirement pre-dated the signing of the franchise agreement. Moreover, after a careful review of the record in this case, the Court finds no evidence of Nissan coercing CDL to expand its facilities.[5] Upon completion of a one-year Datsun franchise agreement, and upon Conroy's representation that construction of the new facility was virtually complete, Nissan entered into a five-year Sales and Service Agreement with CDL. Under the holding in *Houser,* Nissan's requirement that CDL expand its facilities before CDL could receive the five-year agreement that it desired, thus, does not constitute coercion under the Act. *See also Milos v. Ford Motor Co.,* 317 F.2d 712, 717 (3d Cir. 1963).

■ The second of Nissan's actions alleged to be in violation of the Act is Nissan's prevention of CDL "from being able to sell or transfer their interest in the dealership." [Complaint, ¶ 4(b)]. Although Nissan argues that the record does not support this claim, for purposes of Nissan's motion for summary judgment, the Court must consider all disputed facts in favor of plaintiff. Nissan nonetheless asserts that even if it did prevent CDL from selling its assets, as alleged, summary judgment should be entered against CDL because CDL cannot show that Nissan used any coercion, as required under *Houser.*

CDL's attempt to sell or transfer its interest in the dealership was instigated, not by Nissan, but as a result of CDL's loss of its floor plan financing for its new car inventory. Thus, there is no allegation that Nissan coerced CDL into terminating its franchise. The only allegation of bad faith and coercion relates to Nissan's alleged attempt to prevent CDL from transferring the franchise. But since the decision regarding the granting of a franchise is solely within the purview of the auto manufacturer, it is impossible for CDL to show that Nissan exerted any coercion; for, in essence, there was nothing to coerce.

Nissan's actions are indistinguishable from those cases where existing franchisees challenged a manufacturer's denial of the franchisee's attempt to transfer the franchise to a particular applicant. *Fray Chevrolet Sales, Inc. v. General Motors Corp.,* 536 F.2d 683, 685 (6th Cir. 1976); *Spitler Chevrolet, Inc. v. General Motors Corp.,* 1980–1 Trade Cases ¶ 63,225 at 78,101 (E.D. Mich.1980); *McDaniel v. General Motors Corp.,* 480 F.Supp. 666, 677 (E.D.N.Y.1979); *Frank Chevrolet v. General Motors Corp.,* 304 F.Supp. 307, 316 (N.D.Ohio 1968), *aff'd,* 419 F.2d 1054 (6th Cir. 1969). In all the above-cited cases, except *Frank Chevrolet,* the courts granted defendants' motions for summary judgment on the theory that plaintiffs had failed to show a "wrongful demand" by the manufacturer and therefore could not prove coercion under the Act. This Court is unwilling to engraft this additional element of proof onto the burden that a plaintiff already must meet under the Act. To focus on the "wrongfulness" of a particular demand diverts the Court's attention from the salient question of coercion and opens a new area of inquiry uncalled for by the Act itself. Moreover, there is no need to conduct such an inquiry. The seminal case in the above line of decisions, *Frank Chevrolet,* focused on the key fact. In considering a claim that Chevrolet had refused to approve of the granting of a franchise to a prospective purchaser, the court held that, "since the franchise was not the plaintiff's property to sell but Chevrolet's power to extend, Chevrolet's action cannot be deemed coercive." 304 F.Supp. at 315–316. This same fact underlies the decision in the instant case. CDL could not be coerced to present the conveyance of

---

**5.** Indeed, Nissan twice extended the deadline within which time CDL was obligated to complete construction in order to qualify for the standard five-year Sales Agreement with Nissan.

something over which it had no control. Accordingly, Nissan's motion for summary judgment as to Count I must be granted.

In summary, CDL's motion for leave to amend its complaint is denied as to its "popular model" claim [Proposed Complaint, Count I, ¶ 4(c)] and granted as to the warranty claim [Proposed Complaint, Count III];[6] Nissan's motion to dismiss Conroy from Count I and to dismiss Count II in its entirety is granted; and Nissan's motion for summary judgment as to Count I is granted. It is so ordered.

---

**6.** In accordance with this Court's ruling on standing with respect to Count I, it is clear that although the proposed Count III was brought on behalf of CDL and Conroy, only CDL has a right to maintain this action under the Act. Accordingly, on the Court's own motion, Conroy is dismissed as a plaintiff under Count III.